Raymond **CASTANEDA**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 68144, 68145.

Court of Criminal Appeals of Texas, En Banc.

Sept. 26, 1984.

Rehearing Denied Jan. 23, 1985.

---

Mark F. Holland, J. Stephen Cooper, Dallas, for appellant.

Henry Wade, Dist. Atty., Gilbert P. Howard, Rider Scott and Cathey Crier, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

Appellant was indicted for the murders of Santos Mendoza Esquivel and Tierzo Obiedo. With appellant's consent, the cases were tried together. Punishment in each case was assessed at ninety-nine years.

In his first ground of error, appellant claims that the evidence was insufficient to corroborate the accomplice witness' testimony. Julia Resendez, the accomplice witness, testified that she accompanied Maria and Margarita Castaneda to a pool hall during the evening of March 22, 1980. There they met the appellant and Jerry Leos. While the group was at the pool hall, they met the victims. As the evening progressed, the victims began buying beer for Julia and her friends. At one point, while the victims were playing pool, Leos and appellant suggested they rob the victims. They told Julia that if she could lure the victims outside, they would then rob them. Julia agreed to take part. She approached Santos Esquivel and told him she wanted to talk to him outside about a proposition he had made to her earlier in the evening. The pair exited the pool hall and walked around the side of the building. As they were discussing the terms of the earlier proposition, appellant and Leos came out the back door of the pool hall and commenced to beat Esquivel. When Esquivel was beaten into unconsciousness, the trio gagged him, pulled his shirt up over his head, bound his hands behind him with a belt and dragged his body over near the neighboring grocery store. They removed his shoes, searched his pockets and found a total of $4.00.

Julia then went back into the pool hall and approached Tierzo Obiedo who was playing pool. Obiedo agreed to accompany Julia outside. Once again the same scenario was repeated. However, during the struggle with Obiedo, both appellant and Leos stabbed Obiedo with their pocket knives. After the attack, the trio hid Obiedo's body behind a dumpster. They took off his trousers and boots and threw the

trousers onto the roof of the pool hall. The trio netted $2.00 from Obiedo.

The accomplices then left the pool hall in Julia's 1973 Thunderbird. As they were driving away, they decided that since they had killed Obiedo they would have to go back and kill Esquivel. Julia dropped appellant and Leos off a block away from the pool hall. The two men returned to Julia's car a short time later and told Julia that they had killed Esquivel. Julia gave the men a ride home. Before appellant left her, he gave her the knife with which he had killed Obiedo. She stuck this knife inside her panties.

Other evidence adduced at trial showed that police investigators found one spot of blood in the alley beside the pool hall and another spot of blood immediately behind the pool hall. The body of Santos Esquivel was found lying beside the grocery store. The deceased's shirt had been pulled over his head, his hands had been tied behind his back and, when the investigators pulled his shirt down, they discovered Esquivel had been gagged. The body of Tierzo Obiedo was found behind the dumpster. Obiedo's trousers had been removed and investigators found a pair of trousers on the roof of the pool hall. Neither body had shoes on although two pairs of shoes were found in the nearby area.

Officers arrested Julia Resendez the morning after the offense. A search of Resendez as she was being booked into jail led to the recovery of a pocketknife hidden in her panties.

Sarah Williams, a forensic serologist, testified that she did a series of blood analysis on items of evidence recovered during the investigation of the case. She testified that Santos Esquivel had type A blood while Tierzo Obiedo had type O blood. A sample of blood taken from behind the pool hall was type O blood and a sample of blood taken from the alley beside the pool hall was type A blood. The pocketknife obtained from Julia Resendez contained stains of type A blood. Tests on a coat and trousers removed from appellant's home also revealed stains of type A blood. Final-ly, Williams testified that if an object was first covered with type O blood and then covered with type A blood, the type A blood would mask the type O blood so that testing would only reveal the type A blood.

Finally, Dr. Charles Petty, testified that he conducted autopsies on both victims. Both men had been beaten about their faces with blunt instruments, possibly fists. They had then been stabbed numerous times with a knife having a blade of 2½ to 3 inches in length. Both bodies contained abrasions consistent with being dragged along the ground. Dr. Petty further testified that he found no defensive wounds on Esquivel's body and he found this significant in that ordinarily an individual would not remain motionless while being stabbed numerous times. Dr. Petty thus concluded that Esquivel must have been disabled in some manner before he was stabbed. Obiedo's body also showed no evidence of defensive wounds.

 The trial judge instructed the jury as a matter of law that Julia Resendez was an accomplice witness. Article 38.14, V.A. C.C.P., requires that before a conviction can be obtained based upon the testimony of an accomplice witness, there must be some corroborating testimony that tends to connect the defendant with the offense. To test the sufficiency of this corroborating testimony, the reviewing court must eliminate from consideration the evidence of the accomplice witness, and then examine the evidence of the other witnesses to ascertain if it is of an incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient. *Paulus v. State*, 633 S.W.2d 827 (Tex.Cr.App.1982) (on rehearing); *Walker v. State*, 615 S.W.2d 728 (Tex.Cr. App.1981); *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr.App.1979). The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Walker v. State*, supra; *Eckert v. State*, 623 S.W.2d 359 (Tex.Cr. App.1981); *Carrillo v. State*, supra.

However, a conviction cannot stand if the corroborative evidence does no more than point the finger of suspicion towards an accused. *Paulus v. State*, supra; 24 Tex.Jur.2d Evidence, Sec. 694, p. 326, note 18, and cases there cited. Thus, if the accomplice witness states a number of facts that are corroborated by evidence of other witnesses, but these corroborated facts do not tend to connect the accused with the crime, the requirements of Article 38.14, V.A.C.C.P., are not met. *Paulus v. State*, supra.

Our review of the record reveals this to be the problem in the instant case. Although the State's case contains a great amount of detailed corroborative evidence which shows the commission of the murders, there is no corroborative evidence which links appellant to the crime. The State argues that blood found on appellant's discarded clothing links appellant to the crime. We would note initially that the only testimony which identifies these items of clothing as belonging to appellant is hearsay testimony from one of the investigating officers. The State's brief emphasizes that the yellow coat was found in "Appellant's bedroom." However, the record does not bear this out. The officer's testimony only refers to "the bedroom of the home." The evidence showed that appellant lived in the house with his mother and brother and there is no testimony that shows who occupied "the bedroom." Secondly, there is no evidence in the record that appellant was wearing this clothing at the time of the murders. The State also argues that the bloodstained knife connects appellant to the offense. However, the only evidence linking appellant to the knife came from the accomplice witness. No one else testified that the knife belonged to appellant, or that he was ever seen in possession of the knife. The State further argues that the evidence showed flight on appellant's part since he was not at home when the police came to arrest him the evening after the offense. Once again, there is no evidence in the record to show flight. The record only shows that appellant was not at home when the officers attempted to execute the arrest warrant. Finally, the State argues that the evidence shows that appellant and Jerry Leos admitted the killings in the presence of several other persons shortly after the offense. However, the only testimony concerning these admissions came from the accomplice witness. The State did not have any of the other persons who heard these admissions testify. Thus there is no corroboration. There is no evidence other than the testimony of the accomplice witness that places appellant and Leos at the pool hall at any time. The corroborative evidence produced by the State in no way connects appellant to the crime. Because of the lack of evidence in this regard, we find that the evidence is insufficient.

The judgments are reversed and remanded to the trial court for the entry of judgments of acquittal in both cases. See *Ex parte Reynolds*, 588 S.W.2d 900 (Tex.Cr. App.1979), cert. denied, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).