**Will Frank WESTBROOK Appellant,**

v.

**The STATE of Texas Appellee.**

**No. 6–85–061–CR.**

Court of Appeals of Texas,
Texarkana.

May 6, 1986.

William A. Bratton, III, Dallas, for appellant.

Dan Meehan, Dist. Atty. of Fannin County, Bonham, for appellee.

BLEIL, Justice.

Will Westbrook appeals his conviction of attempted aggravated manufacture of amphetamine, a controlled substance. He challenges the sufficiency of the evidence to support the conviction, claiming that the testimony of two accomplices lacks sufficient corroboration. We agree and reverse the judgment of conviction.

Howard Jeter and his wife, Melinda Jeter, each admitted participation in a drug scheme which involved the manufacture of amphetamine during early August 1984. Howard Jeter related that the manufacturing laboratory was first operated in Westbrook's home in Irving, and later moved to a rural location in Fannin County. The Jeters testified that Westbrook's white pickup truck was used to transport the chemicals and equipment to Fannin County. Equipment and chemicals of the type purchased at Metroplex Chemical Company on August 13 by the Jeters and Floyd Hill were found at the Fannin County location.

Westbrook concedes the sufficiency of the evidence to support his conviction when the accomplices' testimony is considered, but focuses his attack on the lack of evidence to corroborate the testimony of Howard and Melinda Jeter, whom the court determined to be accomplices as a matter of law. Tex.Code Crim.Proc.Ann. art. 38.-14 (Vernon 1979) provides that:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

We test the sufficiency of the corroboration by eliminating the accomplices' testimony and then examining the remainder of the evidence to ascertain if it tends to connect the accused with the commission of

the offense. *Cruz v. State*, 690 S.W.2d 246 (Tex.Crim.App.1985); *Brown v. State*, 672 S.W.2d 487 (Tex.Crim.App.1984). We now review the evidence, having eliminated the testimony of the accomplices, to see if it tends to connect Westbrook with the commission of the offense.

Sometime before August 16, 1984, Fannin County law enforcement authorities, together with Drug Enforcement Administration agents, obtained a search warrant covering a mobile home located next to a wood frame house. The mobile home was on the property owned by Russ Lemon near the intersection of State Highway 78 and FM 1553 in Fannin County. The warrant named Howard Jeter, along with others unknown, as persons suspected of possessing amphetamine and drug paraphernalia. Armed with this warrant, the authorities proceeded to the site. Russ Lemon neither knew of nor authorized the use of his property or home by the persons found there on the date the warrant was executed. The authorities arrived at the Lemon property about 1:25 p.m. Mike Bankston, Bonham Chief of Police, Dale Day, a fellow police officer, and Drug Enforcement Agents Tim Estep and Charlie Teer and another agent went to the trailer described in the warrant.

When the officers arrived, Floyd Hill and Howard Jeter were standing outside near the front door of the trailer, and as the officers entered the property through the gate, the two men went inside the trailer. The officers went into the trailer, which consisted of a bedroom, bathroom, small kitchen, and living area. In the bathroom they found flasks, glass containers, and various equipment of the type used in the production of amphetamine. The bathtub had water in it, with tubes and pipes going into the water. The officers noted a strong odor, which they described as acidic and not similar to anything they had smelled before. Various chemicals and other equipment were found in the trailer and underneath the wooden building. Police dusted

most of the lab equipment at the scene, finding Howard Jeter's fingerprints on a condenser and another set of fingerprints not belonging to any of those arrested.

Shortly after the officers' arrival, Glenn Hale drove up in a 1981 Cadillac, accompanied by Melinda Jeter in the front seat and Westbrook in the back seat. Robert Westbrook, appellant's brother, owned the vehicle which was registered in the name of Texas Equipment Sales. Inside the car, police found three sacks of groceries and, in the trunk, they found art supplies, personal notes, a saddle, saddle soap, and a piece of paper with certain names on it, some of which were names of narcotics officers in the Dallas area.

The State produced no other evidence tending to connect Westbrook with attempted manufacture of amphetamine. Nevertheless, Westbrook elected to testify in his own behalf at trial. He indicated that he had come to inspect that area early in the morning of the sixteenth, hoping to lease it from Floyd Hill in order to raise some cattle to help pay for open heart surgery which he claimed to urgently need. He said that the car which he was driving was his brother's and he was using it on a trial basis with prospects that he would purchase the vehicle if he liked it. He also said that he owned a 1974 Monte Carlo Chevrolet which he had agreed to sell to Floyd Hill.

Photographs placed Floyd Hill and the Jeters in this 1974 Chevrolet when they purchased chemicals and laboratory equipment from Metroplex Chemical Company in Dallas. This vehicle was apparently driven away from the Lemon place on August 15 by Jerry Westbrook, appellant's cousin, and was never returned. Westbrook stated that he had not reported the car stolen, but he had asked his wife to do so.

Westbrook said that he slept when he arrived at the Lemon place, because he did not want to wake the others. Later, they all ate a breakfast prepared by Melinda. Westbrook said that he noticed a strong

odor but took it to be the result of poor housekeeping.

The State argues that Westbrook's testimony is not credible or logical and that his explanation of his presence at the scene is not believable. Because the jury found Westbrook guilty, we may assume that it disbelieved each part of his testimony. Nevertheless, we are unable to say that any part of Westbrook's testimony tends to connect him with the offense charged. If believed, his testimony directly refutes the charge; otherwise, it simply is not believed.

Assessing the evidence other than the accomplices' testimony, we find none which links Westbrook to the rural drug laboratory, the chemicals or the drug paraphernalia found. No evidence of his purchase of chemicals or equipment exists. No evidence of flight exists. Westbrook's fingerprints were not found on the laboratory equipment. Even the law enforcement officers stated that just being in or around the trailer would not cause an untrained person to suspect that a drug laboratory was present.

A conviction cannot stand if the corroborative evidence does no more than point the finger towards the accused. *Castaneda v. State,* 682 S.W.2d 535 (Tex.Crim.App.1984). And the evidence which corroborates what the accomplice witnesses said but which does not tend to connect Westbrook with the crime cannot be said to corroborate the accomplices' testimony. *Walker v. State,* 615 S.W.2d 728 (Tex.Crim.App.1981).

We conclude that there is insufficient evidence, other than the accomplices' testimony, to support this conviction. Therefore, the conviction must be reversed and remanded to the trial court for proceedings consistent with this opinion. *See Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Phillips v. State,* 672 S.W.2d 885 (Tex.App.—Dallas 1984, no pet.).

The judgment of the trial court is reversed and the cause is remanded to that court.