**Trudy Howard LeBLANC, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. A14–86–423–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 20, 1987.

Michael B. Charlton, Houston, Buddy Stevens, Angleton, for appellant.

John B. Holmes, Jr., Dist. Atty., Frances M. Northcutt, Brian J. Rains, Asst. Dist. Attys., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ROBERTSON and CANNON, JJ.

## OPINION

CANNON, Justice.

Appellant appeals her conviction for murder, for which the jury assessed punishment at life imprisonment. In twelve points of error, appellant complains about (1) the insufficiency of the evidence; (2) improper admission of hearsay and opinion testimony; (3) improper exclusion of a witness' testimony; and (4) improper jury argument. We find error in the trial court's judgment and, accordingly, reform the judgment and affirm it as reformed.

The facts developed at trial indicated that the victim, Robert Howard (Howard), was murdered on October 25, 1980. Howard was appellant's ex-husband. He was shot by James Paster (Paster), who was accompanied by Steven McCoy (McCoy) and Gary LeBlanc (Gary). Gary is appellant's brother-in-law.

In January 1983, Paster and McCoy were arrested for the murder of a young woman. Their arrest touched off a chain of events that resulted in Gary's arrest for Howard's murder. Gary and his attorney agreed to assist the State in making a case against appellant and her husband, Eddie LeBlanc (Eddie). Gary is Eddie's brother. A recorder/transmitter was placed on Gary's body. Gary then went to appellant's and Eddie's house, where a conversation between Eddie, Gary, and appellant occurred. This conversation was recorded and introduced at trial. Appellant and Eddie were arrested for murder. Eddie pleaded guilty to murder in exchange for a life sentence. Appellant was subsequently convicted for murder.

At trial, Gary testified concerning the events leading up to the murder, and to the murder itself. He stated that Eddie told him that he, Eddie, wanted Howard "hurt." An agreement was reached between Eddie and Gary, who was acting on behalf of Paster and McCoy, to kill Howard for $1000—$500 "up front" and $500 when the job was completed.

Gary testified that he talked with Eddie to get information concerning the type of vehicle Howard drove, where Howard worked, and where Howard "hung out." Gary also went to Eddie's and appellant's house where he received a picture of Howard. The picture of Howard was brought out of the house by appellant. At some point, the picture was given to Gary by either appellant or Eddie. Gary testified that he needed the picture because neither he, McCoy, nor Paster knew what Howard looked like.

The original plan to kill Howard by hooking a spark wire to the gas tank of Howard's truck failed. Gary recontacted Eddie and told him that the bomb failed. Gary told him that he, Gary, and his partners needed to know exactly where Howard would be.

Gary then testified that he again spoke with appellant and Eddie on the night before Howard was killed. He testified that appellant told him she would be meeting Howard at the Legal Tender Club between 8:00 and 9:00 p.m. Appellant gave Gary directions to the club.

Gary testified that he contacted Paster and McCoy and told them where Howard was going to be. The trio went to the Legal Tender Club to wait for Howard. Gary slashed a tire on Howard's truck so that Howard could not drive away. Howard came out of the club, and, while attempting to change the tire, was shot and killed. Gary telephoned Eddie to tell him that Howard was "taken care of." Gary was subsequently paid by Eddie.

■ In point of error one, appellant complains that the evidence is insufficient to sustain the conviction. Specifically, she contends that the only evidence offered to incriminate appellant was the testimony of the accomplice witness, Gary LeBlanc (Gary), who testified to two incriminating facts: (1) that appellant may have given him a photograph of the victim and (2) that she told Gary that she was going to meet the victim at the Legal Tender Club between 8:00 and 9:00 p.m. She maintains that this incriminating testimony—that appellant, prior to the murder, encouraged, aided, or attempted to aid another person *to commit the murder*—was not corroborated by other evidence tending to connect her with the offense committed as required by Tex.Code Crim.Proc.Ann. art. 38.14 (Vernon 1979). Because her conviction cannot stand on the uncorroborated testimony of the accomplice witness, she concludes that her conviction must be reversed.

■ In testing the sufficiency of corroborating testimony, we eliminate from consideration the evidence of the accomplice witness, and then examine the evidence of the other witnesses to ascertain if it is of an incriminating character that tends to connect the accused with the commission of the offense. *Castaneda v. State*, 682 S.W.2d 535, 537 (Tex.Crim.App.1984). If there is such evidence, the corroboration is sufficient. *Id.* The corroborative testimony need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.* It need only make the accomplice witness' testimony more likely than

not. *Meyers v. State*, 626 S.W.2d 778, 780 (Tex.Crim.App.1982).

■ After reviewing the record, we find that there is sufficient corroborating evidence to connect appellant with the offense. The record shows that after Gary was arrested for the murder of Howard, he agreed to cooperate with the State by allowing himself to be wired for sound. He then went to appellant's home where he engaged appellant in a discussion about his arrest for the murder of Howard. He stated that he wanted to talk to appellant and Eddie. Appellant stated, "Don't mention how I, I helped, you know." This incriminating statement by appellant herself is sufficient to corroborate Gary's testimony that appellant aided in the commission of the murder by telling him where and when he could find Howard.

Additionally, Nelda Hadlock (Hadlock), Howard's wife at the time of the murder, corroborated Gary's testimony concerning appellant's participation in the murder. Hadlock testified that she spoke with Howard on Friday, October 24, 1980, the day before the murder. Howard told her that he would not be able to see her that weekend because he had plans to take his children to an arcade named the Gold Mine located in Almeda Mall and to meet with the appellant on Saturday. The police officer who found the body said the Legal Tender Club was located in Almeda Mall. Although appellant argues that the testimony by Hadlock does not corroborate the fact that the meeting between Howard and herself was to actually take place at the Legal Tender Club, we find her testimony does make Gary's testimony more likely than not.

Further, Officer Smith (Smith), one of the investigating officers, testified that Hadlock had called him and told him about her conversation with Howard on the night before his murder. Smith testified that Hadlock told him that Howard had called her, Hadlock, and told her that he was going to leave the boys at the Gold Mine while he talked to Trudy (appellant). He further stated that Hadlock told him that

Trudy wanted to meet Howard at a bar the next night, October 25, 1980.

We find that the accomplice witness' testimony was sufficiently corroborated and, therefore, conclude that the evidence is sufficient to sustain appellant's conviction. Point of error one is overruled.

■ In point of error three, appellant contends the trial court erred in denying her motion for mistrial after the investigating officer gave his personal opinion concerning appellant's involvement in the murder of Howard. We disagree.

The prosecutor asked the investigating officer, "Was there anything in your investigation to change your mind about the involvement of the defendant in the murder of Robert Howard?" The officer answered, "No." Appellant then objected to the question. The court sustained the objection, struck the question and answer from the record, instructed the jury to disregard the question and answer, and denied the motion for mistrial. We hold that, although it was error for the State to ask this question of the officer, the instruction to disregard was sufficient to cure the error. *See Huffman v. State*, 691 S.W.2d 726, 730 (Tex.App.—Austin 1985, no pet.). Point of error three is overruled.

■ In points of error four, five, six, and eight, appellant contends that the trial court erred in admitting the hearsay testimony of Detective Smith (Smith), wherein he testified to the contents of a conversation he had with Nelda Hadlock (Hadlock), the victim's wife, on June 27, 1985, during his investigation of Howard's murder. Smith was permitted to testify, over appellant's repeated hearsay objections, to the following statements made to him by Hadlock:

She told me that he [Howard] had called her to break a date that she had set for the next night.

. . . . .

He told her—she told me that Robert told her that he couldn't meet her the next night because—they had a preset arrangement to meet the next night to talk about getting back together. Robert told her he couldn't keep the date,

that he received a call from Trudy [appellant], that she had asked him to meet him—

.    .    .    .    .

Robert told her [Hadlock] he had gotten a call from Trudy Howard, that Trudy asked him to meet her at a club or a bar—she couldn't remember the name of it or exactly where it was—but that he was supposed to meet her and talk about Trudy's children—Trudy and his children. He told her [Hadlock] that he was going to leave their two boys at a place he said was the Gold Mine while he talked to Trudy. He was going to leave the two boys at the Gold Mine.

She [Hadlock] continued to tell me that Trudy wanted to meet him [Howard] at a bar the next night, which was 10–25 of '80.

Appellant argues that admission of these hearsay statements was clearly harmful because Smith's testimony was offered to corroborate the accomplice witness' testimony.

We find, however, that the trial court committed no error in admitting Smith's testimony. Appellant's counsel cross-examined Smith extensively about Hadlock's oral statement to him. On redirect examination, the State then elicited the complained of testimony, which also concerned Hadlock's statement to Smith. Admission of this testimony was correct under article 38.24 of the Texas Code of Criminal Procedure,[1] the rule of optional completeness. *See Austin v. State,* 712 S.W.2d 591 (Tex. App.—Tyler 1986, no pet.). Points of error four, five, six, and eight are overruled.

■ In point of error seven, appellant again complains that the trial court erred in admitting the hearsay testimony of Detective Smith (Smith). Her complaint focuses on that portion of Smith's testimony on redirect examination wherein he testified about a conversation he had with William Howard, the victim's son. We note, however, that the testimony about which appellant complains was previously elicited from

Smith by appellant's trial counsel during cross-examination. When a defendant offers the same testimony as that objected to, he may not complain on appeal about admission of that testimony. *Womble v. State,* 618 S.W.2d 59, 62 (Tex.Crim.App. 1981). Point of error seven is overruled.

■ In point of error nine, appellant complains that the trial court erred in refusing to allow her witness to testify to the contents of a conversation between the witness and Eddie. Appellant's witness testified that he had a conversation with Eddie prior to Howard's murder. The State objected to admission of the contents of the conversation on hearsay grounds. The trial court sustained the objection. Out of the jury's presence, appellant elicited from the witness the contents of the conversation. The witness testified Eddie stated that he was going to get even with Howard and that "something bad" was going to happen to Howard in a couple of days. The witness was asked whether Eddie said anything about appellant. The witness replied, "He said that Trudy didn't really know anything about it...." Appellant now argues that the statement concerning appellant's involvement is admissible under Tex.Penal Code Ann. § 19.06 (Vernon 1974). We disagree.

We note initially that appellant did not object to the trial court's ruling on the basis of section 19.06 and, consequently, has preserved no error for review with regard to the admissibility of the testimony on that basis. Complaints urged on appeal must be the same as the objection made at trial in order to preserve the complaint for appellate review. *Van Byrd v. State,* 605 S.W.2d 265, 269 (Tex.Crim.App.1980). Further, section 19.06 is a rule of relevancy; it does not change, limit, or extend the rules of hearsay. *Erwin v. State,* 531 S.W.2d 337, 339 (Tex.Crim.App.1976). The statement offered by appellant was clearly hearsay and, as such, was properly excluded by the trial court. Point of error nine is overruled.

---

**1.** Article 38.24 was repealed and replaced by Tex.R.Crim.Evid. 107, effective September 1, 1986.

In points of error ten through twelve, appellant complains about improper prosecutorial argument before the jury. Specifically, in point of error ten, she complains about the prosecutor's statement: "All Eddie has to say 'Look, she didn't have anything to do with it.'" In point of error eleven, she complains about the prosecutor's statement: "We know Eddie takes the position—'I am not going to say anything.' He wanted to talk to his lawyer." And, in point of error twelve, appellant complains about the prosecutor's statement: "[W]hy didn't Eddie say she wasn't involved? Ask yourselves, 'Has she told us the truth?'" We do not find, however, that the prosecutor's arguments were improper.

To be proper, jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. *McKay v. State*, 707 S.W.2d 23, 36 (Tex.Crim.App.1985), *cert. denied*, — U.S. —, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). In order to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence. *Id.*

After reviewing appellant's complaints in points of error ten and twelve concerning the prosecutor's statements about Eddie's failure to exculpate appellant, we find them without merit. Appellant's counsel argued that Eddie was solely responsible for planning the murder and did not want appellant to know about it. The prosecutor's argument was a proper response to the argument of opposing counsel. Further, the State may comment on the failure of an accused to produce her spouse as a witness when the spouse could have testified about matters properly admissible in evidence. *See King v. State*, 614 S.W.2d 165, 167 (Tex.Crim.App.1981). Points of error ten and twelve are overruled.

Moreover, we find equally meritless appellant's complaint in point of error eleven. Admitted into evidence was the audio recorded conversation between Gary, Eddie, and appellant wherein Eddie explicitly stated that if arrested, he was not going to say anything, and that he would talk to his lawyer. The prosecutor's argument was clearly based on facts in evidence. Point of error eleven is overruled.

In point of error two, appellant contends that the evidence is insufficient to sustain the jury's deadly weapon finding, which was entered by the trial court in its judgment. We agree. While the evidence is sufficient to sustain appellant's conviction on the law of parties, the record contains no evidence showing that appellant either shot the victim or was present at the scene of the offense. Thus, on the basis of *Travelstead v. State*, 693 S.W.2d 400 (Tex. Crim. App.1985), the deadly weapon finding must be deleted. We sustain point of error two and, accordingly, pursuant to Tex.R. App.P. 80(b)(2), reform the judgment by deleting the deadly weapon finding.

Accordingly, the judgment of the court below is reformed and affirmed as reformed.