**Joshua John HUMPHRIES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–96–00269–CR.**

Court of Appeals of Texas,
El Paso.

May 13, 1999.

Rehearing Overruled June 23, 1999.

William R. Bowden, Odessa, for appellant.

John W. Smith, Dist. Atty., Odessa, for State.

Before Panel No. 1 LARSEN, McCLURE, and CHEW, JJ.

## OPINION

SUSAN LARSEN, Justice.

This is an appeal from a conviction for murder for remuneration. A jury found the appellant, Joshua John Humphries, guilty. Because the State did not seek the death penalty in this capital murder case, Humphries was automatically sentenced to life imprisonment in the Texas Department of Criminal Justice—Institutional Division. We affirm.

### FACTS

This case arises from the murder of Rachel Juanita Green. According to Humphries' statement, he and four others, including Jason Trent and Lincoln Keith, obtained a gun, got in a single car, and went to Green's apartment at approximately 12 a.m. on October 18, 1994. On the way, the group picked up Melanie Green, Green's granddaughter. According to other witness testimony, Humphries told Keith and others that Melanie Green would pay $400 to anyone who would kill her grandmother. Humphries directed the group to Green's apartment and told the driver where to park. Upon arrival, Humphries went up to the apartment to be sure Green was home and asleep. He verified that Green was asleep and reported back to Keith and the others in the car that they should go ahead and enter the apartment. Once inside the apartment where Green was sleeping, Humphries pointed out Green's bedroom to Keith. Humphries opened Green's door for Keith, and retreated to the bathroom while Keith entered the bedroom and shot Green three times. When Keith wanted to be sure Green was dead, Humphries helped Keith find the light switch so he could see. In order to help make the killing look like a robbery, Humphries took two rifles from the bedroom closet, while Keith found Green's purse. After finding a large sum of money in the purse, Keith kept the majority of the cash and shared "a couple of hundred" with each of the others, including Humphries. Humphries and the others felt that this was fair since Keith had pulled the trigger. Humphries admitted that he originally intended to poison Green himself, but Keith convinced him

that shooting her would be better. After killing Green, the group left and went to get food from Taco Bell.

### ABATEMENT FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW

Humphries' first issue requested an abatement and remand to the trial court for written findings of fact and conclusions of law on Humphries' motion to suppress his recorded statement pursuant to Texas Code of Criminal Procedure Article 38.22, Section 6.[1] On September 18, 1998, this court abated the appeal and remanded the issue to the trial court. The trial court entered its findings of fact and conclusions of law on October 19, 1998. Accordingly, we now proceed with the merits of the appeal.

### VOLUNTARINESS OF STATEMENT

In his second and third issues, Humphries contends that his tape-recorded statement was rendered involuntary pursuant to the Texas and United States Constitutions by the interrogating officers' promise to make Humphries a witness in the case. Humphries does not identify which statements he contends constituted the promises. Humphries' transcribed statement reveals the following exchange between Humphries and Investigator B.J. White:

White: Okay. Do you want to go to jail for someone that's within that seven (persons who lived at Humphries' apartment and were suspected of the murder)?

Humphries: I'm not willin' to go to jail for anybody.

White: That's good. Good step. Good decision, because ... a party to a crime can get just as much time as the one who did it. And that's knowledge. You know. A person that comes forward, though, and gives the information and

doesn't conceal it, is not part of a crime. (inaudible) ... witness. If you have some knowledge of this, it's your decision to be a party to the crime or be a witness. Witnesses don't go to jail. You're sittin' on important information. Now you told me that you didn't do it. So, if you didn't do it, then you're a witness. (inaudible) You don't know anything about this? You can pass the polygraph? ... (pause).... Okay. Who within your group do I need to talk to?

Prior to White's statement, Humphries had insisted that he had nothing to do with the murder, had not left his apartment on the night of the murder, and did not know who committed the murder. After he changed his story and admitted that he was present when the murder took place, Humphries inquired at several different times as follows: "I'm a witness, right?"; "if I understand ya'll right, I'm just a witness"; and "You told me I was a witness and that witnesses don't go to jail in this state. That's what I was." Each time the officers neither confirmed nor denied that Humphries was "only" a witness, nor did they specifically encourage Humphries to continue talking, but Humphries continued giving information anyway. At one point near the end of the interview, Officer White responded to one of Humphries' inquiries, "No, no promises, no guarantees." Nevertheless, Humphries did not ask to stop the interview nor did he request counsel.

 A statement induced by a promise of some benefit to a defendant, which promise is positive, made or sanctioned by one in authority, and likely to influence the defendant to speak untruthfully is involuntary.[2] The rationale for this rule is the inherent unreliability of a confession if the influence applied was such as to make the defendant believe his condition would be bettered by making a confession, true

---

1. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 1979).

2. *Freeman v. State,* 723 S.W.2d 727, 730 (Tex. Crim.App.1986).

or false.[3] In this case, there was never a direct, positive promise that Humphries would be a witness instead of a defendant in the murder case. Rather, the officers told Humphries that if it were true that Humphries was not involved in the murder, but he had information about the murder, then he was simply a witness and would not go to jail for giving information. This was not a promise of a benefit in the sense that Humphries was promised something he would not otherwise have had. Rather, it was a statement of the status of the case in terms of the facts as Humphries had reported them during the interview and of the law applicable to the situation as Humphries had recounted it.[4] Because there was no promise of benefit to Humphries, White's comments did not render Humphries' statement involuntary.[5] That a defendant is ignorant of the consequences of the information he or she gives, as Humphries appears to have been, does not vitiate the voluntariness of the statement.[6]

■ Moreover, the totality of the circumstances show that Humphries' confession was freely and voluntarily given. Humphries went to the station to meet with the officers voluntarily. Humphries was informed of his rights immediately prior to the interview. The officers warned Humphries that he was suspected of the offense, and Humphries responded that he understood. Importantly, given the nature of Humphries' involvement and his claim that he believed he was just a witness, the officers specifically told Humphries that a party to a crime can get "just as much time as the one who did it...." Humphries never asked to terminate the interview nor asserted his right to an attorney. The length of the entire interview, including an approximately twenty minute break taken at Humphries' request, was three hours and two minutes. Although Humphries maintains that the officers misled him by telling him they had fingerprint and hair evidence linking him to the crime, the record does not support the contention. At times during the interview, the officers told Humphries that they intended to compare Humphries' fingerprints and hair to fingerprints and hair found at the murder scene, and that they expected the samples would match, but at no time did the officers state that they had already matched the samples.

Accordingly, we do not find error in the trial court's determination that Humphries' statement was given voluntarily and we overrule Humphries' second and third issues.

## CORROBORATION OF ACCOMPLICE WITNESS TESTIMONY

■ In his fourth issue, Humphries argues that the State failed to corroborate the testimony of an accomplice witness, Jason Trent. The Texas Code of Criminal Procedure states:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.[7]

The State does not dispute that Trent is an accomplice witness. To determine whether corroboration is sufficient, we must eliminate the evidence of the accomplice witness and then examine the evidence of

---

3. *Id.*

4. *See, i.e., Freeman,* 723 S.W.2d at 727 (where defendant was told that he could not be charged with death penalty under facts of the case, interrogators did not make promise or agreement but merely gave correct statement of status of case in terms of facts and law applicable).

5. *Id.* at 731.

6. *Connecticut v. Barrett,* 479 U.S. 523, 530, 107 S.Ct. 828, 832–33, 93 L.Ed.2d 920, 929 (1987).

7. Tex.Code Crim. Proc. Ann. art. 38.14 (Vernon 1979).

other witnesses for evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not.[8] Each case must be considered on its own facts and circumstances.[9] We must consider all of the facts and circumstances in evidence.[10] The corroborative evidence may be circumstantial or direct.[11] It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt.[12] Evidence merely showing the commission of an offense is not sufficient alone to corroborate an accomplice witness.[13] Although the mere presence of an accused before or after the commission of the offense is not, in itself, sufficient corroboration, proof that an accused was at or near the place where the crime occurred at or about the time that it happened, along with evidence of other circumstances can be sufficient corroboration to support a conviction.[14]

 Significantly, here the trial court instructed the jury on the law of the parties. Thus, the jury was authorized to convict Humphries if the evidence was sufficient to show that "acting with intent to promote or assist the commission of the offense, he solicit[ed], encourag[ed], direct[ed], aid[ed], or attempt[ed] to aid the other person to commit the offense."[15]

Humphries' own statement in this case connects him to the murder of Juanita Green as a party. A defendant's confession may be sufficient to corroborate an accomplice, so long as proof of the confession does not depend upon the testimony of the accomplice.[16] Although Humphries' statement does not connect him to the remuneration element of the offense, this deficiency is irrelevant because the testimony of an accomplice in a capital murder prosecution need not be corroborated as to the elements which distinguish murder from capital murder.[17] Accordingly, we find the accomplice witness testimony sufficiently corroborated and we overrule Humphries' fourth issue.

## SUFFICIENCY OF THE EVIDENCE TO PROVE REMUNERATION

 Humphries' fifth issue questions the legal sufficiency of the evidence to prove Melanie Green provided or promised to provide remuneration to Lincoln Keith. In passing on legal sufficiency of the evidence, we determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.[18] We do not resolve conflicts of fact or assign credibility to witnesses, as it was the function of the trier of fact to accept or reject any, part, or all of any

**8.** *Reed v. State,* 744 S.W.2d 112, 125 (Tex. Crim.App.1988).

**9.** *Id.* at 126.

**10.** *Id.*

**11.** *Id.*

**12.** *Id.; Castaneda v. State,* 682 S.W.2d 535, 537 (Tex.Crim.App.1984); *Richardson v. State,* 700 S.W.2d 591, 594 (Tex.Crim.App. 1985).

**13.** *Reed,* 744 S.W.2d at 125; *Nelson v. State,* 542 S.W.2d 175, 176–77 (Tex.Crim.App. 1976).

**14.** *Cox v. State,* 830 S.W.2d 609, 611 (Tex. Crim.App.1992); *Reed,* 744 S.W.2d at 127;

*Brown v. State,* 672 S.W.2d 487, 489 (Tex. Crim.App.1984).

**15.** Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 1994).

**16.** *Farris v. State,* 819 S.W.2d 490, 495 (Tex. Crim.App.1990), *cert. denied,* 503 U.S. 911, 112 S.Ct. 1278, 117 L.Ed.2d 504 (1992).

**17.** *Gribble v. State,* 808 S.W.2d 65, 71 n. 13 (Tex.Crim.App.1990), *cert. denied,* 501 U.S. 1232, 111 S.Ct. 2856, 115 L.Ed.2d 1023 (1991); *Anderson v. State,* 717 S.W.2d 622, 630–31 (Tex.Crim.App.1986).

**18.** *Jackson v. Virginia,* 443 U.S. 307, 318, 319, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57, 159 (Tex.Crim.App.1991).

witness's testimony.[19] Our duty, rather, is to determine only if the explicit and implicit findings of the trier of fact are rational by viewing all the evidence in a light most favorable to the verdict.[20] In so doing, we resolve any inconsistencies in the evidence in favor of the verdict.[21]

We find the following testimony of Jason Trent, when viewed in the light most favorable to the verdict, legally sufficient to support a finding of the offer of remuneration, and of Humphries' knowledge of the offer:

Q: What did Josh [Humphries] tell you?

A: That Melanie was going to be waiting at the door, and whoever was to kill was going to get $400.

. . .

Q: All right. So there are four of you there and you discussed this plan to murder Mrs. Green. What happened next?

A: Well, we went out there around— No, a couple of Josh's friends stopped by not too long before we went out there, probably around 10:30, 11:00.

. . .

Q: All right. And Josh told them they were—what did Josh tell them?

A: He was showing them the gun, just explaining the plan to them.

Accordingly, we overrule Humphries' fifth issue.

### SUFFICIENCY OF THE EVIDENCE AS MEASURED BY THE INDICTMENT

With his sixth through eighth issues, Humphries challenges the sufficiency of

the evidence to convict him as measured against the indictment. The indictment, in pertinent part, read:

> JOSHUA JOHN HUMPHRIES, . . . did then and there intentionally and knowingly cause the death of Rachel Juanita Green by employing another, namely Lincoln Keith, to commit murder of Rachel Juanita Green for remuneration of money provided by Melanie Green and the promise by Melanie Green of remuneration of money and said JOSHUA JOHN HUMPHRIES did intentionally and knowingly cause the death of Rachel Juanita Green pursuant to the aforementioned agreement by shooting her, the said Rachel Juanita Green with a deadly weapon, to wit, a firearm,....

Humphries maintains that pursuant to *Malik v. State*,[22] the indictment required the State to prove that Humphries himself used a firearm to shoot Green.

In *Malik*, the Texas Court of Criminal Appeals held that sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.[23] Humphries argues that the only charge authorized by the indictment in this case would be one that required the jury to find that Humphries himself shot Juanita Green.

■ We must disagree because the charge in this case included the law of parties. As stated earlier, the law of parties provides for criminal responsibility for

19. See *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991).

20. *Adelman*, 828 S.W.2d at 421–22.

21. *Matson*, 819 S.W.2d at 843 (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim. App.1988)).

22. 953 S.W.2d 234 (Tex.Crim.App.1997).

23. *Id.* at 240.

the act of another if, "acting with intent to promote or assist the commission of the offense, [the accused] solicit[ed], encourag[ed], direct[ed], aid[ed], or attempt[ed] to aid the other person to commit the offense."[24] The Court of Criminal Appeals specifically recognized in *Malik* that measuring sufficiency by the indictment alone, as Humphries urges us to do here, is inadequate because some important issues relating to sufficiency, including the law of parties, are not contained in the indictment.[25] Thus, the indictment need not have included the law of parties for the trial court to include the theory in the charge.

■ Responsibility as a party accurately defines the evidence of Humphries' involvement in this case. Humphries did not offer the remuneration and he did not shoot Green. There was evidence, however, that Humphries aided Lincoln Keith in committing the murder by riding in the car with and directing Keith to Green's home, showing Keith where to park to avoid detection, helping Keith enter Green's home, pointing out Green's bedroom to Keith, helping Keith be sure Green was dead, and taking items from Green's bedroom to help make the crime look like a robbery. Humphries aided Melanie Green in accomplishing murder for remuneration by relaying her cash offer to Keith. His involvement in the crime was further established by his admission that he accepted some of the cash taken from the dead woman's purse. Thus the charge in this case, including the law of the parties, accurately set out the law, was authorized by the indictment, and adequately described the particular offense for which Humphries was tried: murder for remuneration as a party. We therefore overrule Humphries' sixth through eighth issues.

**24.** TEX. PENAL CODE ANN. § 7.02(a)(2) (Vernon 1994).

*CONCLUSION*

After remanding this case for findings of fact and conclusions of law pursuant to Humphries' first issue, and after considering and overruling each of Humphries' remaining seven issues, we affirm the judgment of the trial court.