Affirmed and Memorandum Opinion filed February 22, 2007








Affirmed and Memorandum Opinion filed February 22, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01047-CR

____________

 

KEVIN CHRISTIAN L. MARTIN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 997,274

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant, Kevin Christian L. Martin, guilty
of capital murder and sentenced him to life in prison.  Appellant raises two
issues on appeal.  First, he attacks the legal sufficiency of the evidence
adduced at trial, claiming that it did not corroborate accomplice witness
testimony sufficiently to sustain a conviction.  His second issue is an attack
on the factual sufficiency of the evidence on the same grounds.  We affirm.    

Factual and Procedural Background








Appellant worked as a closing supervisor for a Jason=s Deli in Houston,
until he was demoted for doing poor work.  Appellant was subsequently fired by
his supervisor, Ryan Martin, for fraudulently using customers= credit card
information.  As a closing supervisor, appellant had a key to the store, as
well as alarm codes and safe access.  When appellant was fired, Martin changed
the alarm code and safe combination, but at no point did he recover appellant=s key.  

While appellant was visiting his girlfriend and his
daughter in San Antonio, he met up with Aaron Charles and Mark Garrett.  During
their initial encounter, appellant told Charles he had been suspended from work
for credit card abuse.  Charles and appellant discussed their respective money
troubles, and appellant shared with Charles his plan to go to the Jason=s Deli and take a
large amount of cash out of the safe.  Charles was enthusiastic about the plan,
and later that day Garrett agreed to take part as well.  

During the late night of August 3 and early morning of
August 4, 2004, appellant, his girlfriend, Sonia Lisa, their son, and appellant=s brother drove to
Houston, followed in another car by Garrett, his girlfriend, Alicia Atchiason,
and Charles.  The group arrived at appellant=s apartment
between 2:00 a.m. and 3:00 a.m. on the morning of August 4, 2004.  Shortly
after arriving, Lisa and Atchiason left the apartment to visit a friend of Lisa=s and to go to the
store, leaving the four men and Lisa=s son in the
apartment.  While Lisa and Atchiason were gone, appellant, Garrett, and Charles
left the apartment to go to Jason=s Deli.  When the
three men arrived at Jason=s Deli, they saw that a truck belonging to
general manager Ryan Martin was there.  Martin was in the kitchen preparing a
large order of box lunches to be delivered by the company=s catering service
later that day.  Appellant did not want to go into the store because he thought
that Martin would recognize him, so he instructed Garrett and Charles in how
they should proceed.  








Charles and Garrett went to the door of the restaurant and
knocked on the glass to lure Martin toward the front of the store.  Then the
two of them unlocked the door and went into the restaurant.  Garrett brandished
a pistol, and demanded Martin=s cell phone.  Shortly after Martin handed
over his cell phone, the pistol was fired, shooting Martin in the neck. The
shot killed him. Garrett and Charles then fled to the waiting truck.  But
appellant insisted on going back into the restaurant to see if his code would
still open the safe.  Appellant was unsuccessful in getting the money from the
safe, so the three fled the scene, disposing of Martin=s cell phone and
the key to the restaurant along the way.  

After the three men made it back to appellant=s apartment, the
decision was made to take everyone to the beach in Galveston.  On the way to
Galveston the group stopped and bought a bottle of bleach, which was used to
wipe the gun down.  Once they had arrived at the beach, Garrett convinced
Atchiason to swim out into the ocean with the gun and drop it.  Following the
disposal of the gun, the group drove back to San Antonio. 

Eventually appellant was arrested and tried for capital
murder.  He was found guilty by a jury of his peers, and sentenced by the court
to life in prison.  

Analysis

I.        The
Accomplice Witness Rule and Standard of Review

Article 38.14 of the Texas Code of Criminal Procedure
states that A[a] conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed.@ Tex.Code Crim. Proc. art. 38.14.  AThe rule reflects
a legislative determination that accomplice testimony implicating another
person should be viewed with a measure of caution, because accomplices often
have incentives to lie, such as to avoid punishment or shift blame to another
person.@  Blake v. State, 971 S.W.2d 451,
454 (Tex. Crim. App. 1998).  








In conducting a sufficiency review under the accomplice
witness rule, the reviewing court eliminates the accomplice testimony from
consideration and then examines the remaining record to see if there is
inculpatory evidence that tends to connect the accused with the commission of
the crime.  See Thompson v. State, 691 S.W.2d 627, 631 (Tex. Crim. App.
1984).  Legal and factual sufficiency standards derived from federal and state
constitutional principals do not apply.  Cathey v. State, 992 S.W.2d
460, 462B63 (Tex. Crim.
App. 1999).  Corroborating evidence need not directly link the accused to the
crime.  Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).  Nor
is it necessary for the corroborating evidence itself to establish guilt beyond
a reasonable doubt.  Id.  ATendency to
connect@ is the standard
established by the legislature.  Cathey, 992 S.W.2d at 463.  Therefore,
rather than conducting separate legal and factual sufficiency reviews, we
conduct a single review to determine if the combined weight of the
non-accomplice evidence tends to connect the defendant to the offense.  

There is no bright-line rule for when non-accomplice
evidence sufficiently  corroborates accomplice testimony.  The Court of
Criminal Appeals has held that a variety of showings are individually
insufficient to corroborate accomplice testimony.  See, e.g.,
Beathard v. State, 767 S.W.2d 423, 428 (Tex. Crim. App. 1989) (stating that
evidence merely placing defendant at the scene of the crime is insufficient to
corroborate);  Reed v. State, 744 S.W.2d 112, 127 (Tex. Crim. App. 1988)
(stating that evidence merely showing motive or opportunity alone is
insufficient);  Castaneda v. State, 682 S.W.2d 535, 538 (Tex. Crim. App.
1984) (stating that evidence merely pointing the Afinger of
suspicion@ to an accused is insufficient).  However, showings
that are individually insufficient to corroborate may be cumulated with other
circumstances to constitute sufficient corroborative evidence to sustain a conviction. 
See, e.g., Mitchell v. State, 650 S.W.2d 801, 808 (Tex. Crim. App.
1983) (holding presence of the accused with the accomplice may, when coupled
with the other circumstances, be sufficient to corroborate accomplice
testimony); Paulus v. State, 633 S.W.2d 827, 846 (Tex. Crim. App.[Panel
Op.] 1981) (holding evidence showing motive or opportunity can be considered in
connection with other evidence tending to connect the accused with the crime); see
also Hernandez v. State, 939 S.W.2d 173, 178B79 (Tex. Crim.
App. 1997); Burks v. State, 876 S.W.2d 877, 888 (Tex. Crim. App. 1994); Richardson
v. State, 879 S.W.2d 874, 880 (Tex. Crim. App. 1993); Reed, 744
S.W.2d at 127.  And it has been further held that even apparently insignificant
evidence of incriminating circumstances may sometimes afford satisfactory
evidence of corroboration.  Trevino v. State, 991 S.W.2d 849, 852 (Tex.
Crim. App. 1999).  With these standards in mind, we turn to the non-accomplice
testimony in the present case.








II.       Evidence
Was Sufficient to Support Verdict

A.      Presence
with Accomplice

After eliminating the testimony of Aaron Charles, we find
several pieces of evidence tending to connect appellant with the crime.  First,
the appellant was in the company of the accomplice when the crime was
committed.  Atchiason testified that when she and Lisa came back to appellant=s apartment, after
going to the store and to visit a friend, her car was gone, and appellant,
Charles, and Garrett were no longer in the apartment.  She then testified that
later, early in the morning, the three men returned to appellant=s apartment
together.  This testimony places appellant in the presence of the accomplice at
the time the crime occurred.

B.      Motive and
Opportunity

Second, the testimony of Zandras Varela provides evidence
of both motive and opportunity to commit the crime.  Varelas, an acquaintance
of both Martin and appellant, had a conversation with appellant while Varelas
and his wife ate dinner at Jason=s Deli one
evening.  Varela testified that during his conversation with appellant,
appellant told him to Abe careful because [Martin] was the type
of person that after he gets what he wants, he won=t need you no
more.@  He then said he
intended to rob the Jason=s Deli, that he had keys, and that he knew
Ahow to get in and
out.@  These statements
show that appellant had access to the restaurant, he had an intent to commit a
burglary, and he had a possible revenge motive for wanting to burglarize the
restaurant.  Further, Varela testified that his conversation with appellant
happened only a Acouple of weeks@ before Martin=s murder. 

There was also testimony from Russell McDonald, a first
assistant manager with Jason=s Deli, that similarly provided evidence
of possible motive and opportunity.  McDonald testified that appellant was
given a key to the front door of Jason=s Deli pursuant to
his promotion to closing supervisor, and also that appellant did not turn in
his key upon being fired.  McDonald also testified that appellant was demoted
from his position as closing supervisor because of sub-par performance, and
that appellant was upset about the demotion and felt that his career opportunities
in management were being taken away from him. 








Finally, in addition to the testimony regarding appellant=s possession of a
key, there was testimony from Officer Riverra that the Jason=s Deli showed no
signs of forced entry.  No glass was broken and no locks were damaged.  This,
of course, is consistent with the theory that appellant=s key was used to
gain entry to the restaurant.

C.      Involvement
in Disposing of Weapon

Finally, Atchiason testified that appellant was at the
beach, along with Garrett and Charles, when Garrett asked her to dispose of the
murder weapon.  Atchiason testified that,  A[Appellant,
Charles and Garrett] were concerned that I would be the one to, you know, get
away and go tell on them for being in Houston or whatever.  They were scared
that I was upset.  And they felt that if I did that, then I wouldn=t tell.@  Appellant=s involvement,
even though he was not the one asking Atchiason to dispose of the gun, is some
evidence tending to connect him to the murder of Martin.

The cumulation of each independent piece of corroborative
evidence mentioned above tends to connect appellant to the offense of capital
murder of Ryan Martin.  Therefore, we hold that the non-accomplice testimony
was sufficient to corroborate the testimony of Charles.  Appellant=s sufficiency
issues are overruled.  

Conclusion

Having overruled appellant=s issues, we
affirm the judgment of the trial court.  

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

Judgment rendered
and Opinion filed February 22, 2007.

Panel consists of
Justices Fowler, Edelman, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).