NO. 07-05-0187-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MARCH 7, 2007


______________________________



AARON D. PUGH, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-408,028; HON. CECIL G. PURYEAR, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 Aaron D. Pugh challenges his conviction for burglary of a habitation with intent to
commit robbery by contending 1) the trial court erred in denying his motion for mistrial due
to the State's allegedly withholding exculpatory evidence, 2) the evidence is insufficient to
corroborate the testimony of the accomplice witness, 3) the trial court erred in failing to
charge the jury on the voluntariness of the statement given by the accomplice witness, and
4) the evidence is factually insufficient to support the conviction. We overrule each issue
and affirm the judgment of the trial court. 

 Background

 On January 14, 2000, during the early morning hours, the home of Mike Hogan at
Buffalo Springs Lake near Lubbock was broken into and robbed of approximately
$100,000. Hogan, his live-in girlfriend Maria Guillot, and his five-year-old daughter were
in the home at the time. Two men dressed in black and wearing gloves and black ski
masks tied up Hogan and Guillot, and beat and abused Hogan in order to force him to
reveal where he kept cash that they believed was in the residence. After the men finally
found the money, they left the house. 

 The two men involved in the crime were identified by Julie MacKenney, who had
formerly worked as a topless dancer with Guillot. She met Hogan through Guillot and had
driven from Amarillo to Lubbock on several occasions to engage in sexual relations with
Hogan and Guillot for money. During one of the times she had been at Hogan's home, he
had shown her large amounts of cash that he kept there. MacKenney then told a number
of people, including appellant, about the money at Hogan's house. 

 According to MacKenney, appellant and his brother George Franklin wanted to rob
Hogan, and she went with them to help them do so. MacKenney drew a map of the house,
purchased duct tape for appellant at a Walmart store in Lubbock, drove appellant's red
Suburban into the Buffalo Springs Lake area while appellant and Franklin hid in the
vehicle, and waited outside the house while appellant and Franklin broke into the home
and robbed and beat Hogan. She received $5000 out of the stolen money for her efforts. 


Issue 1 - Motion for Mistrial


 Appellant claims in his first issue that the trial court erred in failing to grant his
motion for mistrial. The motion was based on alleged exculpatory evidence which the
State allegedly failed to reveal to appellant. That evidence concerned the fact that Hogan
originally gave a statement in which he positively identified the perpetrators as having worn
black leather ski masks. However, prior to testifying at trial and after one of the
prosecutors informed Hogan that some of the evidence did not match his statement,
Hogan changed his testimony to indicate that the ski masks could have been of a material
other than leather. Appellant's counsel was informed of this during trial and questioned
Hogan about it before the jury. The next day he moved for a mistrial due to a purported
Brady (1) violation. The motion was denied.

 At no time did appellant seek a continuance to address the purported effect of
discovering the changed testimony. This was fatal because such was necessary to
preserve error. See Apolinar v. State, 106 S.W.3d 407, 421 (Tex. App.-Houston [1st Dist.]
2003), aff'd on other grounds, 155 S.W.3d 184 (Tex. Crim. App. 2005) (stating that the
defendant's failure to request a continuance when Brady material is disclosed at trial
waives error or indicates that the delay in receiving the evidence was not truly prejudicial);
Gutierrez v. State, 85 S.W.3d 446, 452 (Tex. App.-Austin 2002, pet. ref'd) (stating that
when previously withheld evidence is disclosed at trial, the defendant's failure to request
a continuance waives any Brady violation).

 Nor did appellant attempt to explain to the trial court how disclosing the changed
testimony would have affected the outcome. That was his burden. Hampton v. State, 86
S.W.3d 603, 612 (Tex. Crim. App. 2002) (holding that the defendant bears the burden of
showing that, in light of all the evidence, it is reasonably probable that the outcome of the
trial would have been different had the prosecutor made a timely disclosure). And, his
insinuation, via his appellate brief, that it "could have" is not enough to fill the void. Id.
(stating that the mere possibility that an item of undisclosed information might have helped
the defense, or might have affected the outcome of the trial, is not enough). 

Issue 2 - Corroboration


 Appellant claims in his second issue that the evidence is insufficient to corroborate
the testimony of MacKenney who was an accomplice as a matter of law. We disagree.

 A defendant cannot be convicted upon the testimony of an accomplice unless it is
corroborated by other evidence tending to connect the defendant with the offense
committed. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). In conducting a
sufficiency review under the accomplice witness rule, the court eliminates the accomplice
testimony from consideration and examines the record to see if any evidence tends to
connect the defendant to the commission of the offense. Solomon v. State, 49 S.W.3d
356, 361 (Tex. Crim. App. 2001). The evidence does not have to directly link the
defendant to the crime or establish his guilt beyond a reasonable doubt. McDuff v. State,
939 S.W.2d 607, 613 (Tex. Crim. App. 1997). In addition, the phrase "tending to connect"
has been interpreted as "'to serve, contribute or conduce in some degree or way . . . to
have a more or less direct bearing or effect,' and while not contemplating conjecture, 'has
a tendency to prove the averments in the indictment.'" Holladay v. State, 709 S.W.2d 194,
198 (Tex. Crim. App. 1986), quoting Boone v. State, 90 Tex. Crim. 374, 235 S.W. 580
(1921). This standard does not present a high threshold but simply reflects a legislative
determination that accomplice testimony should be viewed with some caution. In re
C.M.G., 905 S.W.2d 56, 58 (Tex. App.-Austin 1995, no writ). Moreover, each case must
be decided upon its own facts and circumstances. Reed v. State, 744 S.W.2d 112, 126
(Tex. Crim. App. 1988). 

 The following evidence appears in the record which corroborates the testimony of
MacKenney. (2) First, Hogan testified that the men who robbed him wore gloves, black
clothes, and black ski masks. Second, appellant's red Suburban, along with the visage of
Franklin and another person, can be seen on a security camera of a Walmart store in
Amarillo before the assault on January 13. Third, Franklin can be seen on video
purchasing a black mask and two pairs of cotton gloves at that store at 11:23 p.m. Next,
three hours later, on January 14 at 2:23 a.m., Franklin and appellant, who is dressed in
black, appear on a video camera at a Walmart store in Lubbock purchasing spark plugs
(which could purportedly be used to cut glass). Fifth, just prior to that, at 2:15 a.m.,
MacKenney is seen getting out of the Suburban at the same Walmart store and purchasing
duct tape and a black marker. Sixth, appellant's red Suburban was seen entering the
Buffalo Springs Lake area by a front gate attendant at 3:06 a.m. on January 14 and exiting
about an hour later; the burglary and assault occurred around that time. Seventh, a black
ski mask was found at the home of appellant. While these facts by themselves do not
prove that appellant committed the robbery, they tend to connect him to it. Appellant
argues that this case is similar to Castenada v. State, 682 S.W.2d 535 (Tex. Crim. App.
1984) in which the only evidence linking the defendant to the pool hall where the victims
were murdered was that of an accomplice witness. We find the case at bar distinguishable
due to the fact that appellant, his brother, and MacKenney, all of whom resided in Amarillo,
were seen on videotape in Lubbock in the early morning hours in appellant's vehicle a
short time before the robbery, and appellant's vehicle was identified entering and leaving
Hogan's residential area. 

Issue 3 - Jury Charge


 Next, appellant complains of the trial court's failure to include an instruction to the
jury pursuant to article 38.23 of the Code of Criminal Procedure. We find no error. 

 Article 38.23 provides that in any case where the evidence raises an issue as to
whether evidence was obtained by an officer in violation of the federal constitution or laws
or the state constitution or laws, the jury shall be instructed that if it believes that (or has
reasonable doubt whether) the evidence was obtained illegally, the jury should disregard
any such evidence. Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Appellant
sought the instruction with respect to a written statement given by MacKenney to police on
January 28, 2004, which he alleged was not voluntarily made. The court denied the
request finding that article 38.23 applies only to a statement sought to be used against the
person who made the statement. 

 An accused does not have standing to complain about evidence that is illegally
obtained unless it was done so in violation of his own rights. Chavez v. State, 9 S.W.3d
817, 819 (Tex. Crim. App. 2000). So, even if MacKenney's statement was coerced as
appellant claims, the rights affected were those of MacKenney, not appellant. In other
words, he lacked standing to raise the issue. 

 Nor does appellant's reliance on Garza v. State, 771 S.W.2d 549 (Tex. Crim. App.
1989) cause us to hold otherwise. There, the statement was provided by a passenger in
Garza's car. Since the car was illegally stopped, the witness' statement would be
considered fruit of the improper detention, and the defendant had standing to suppress that
fruit. In short, the evidence was obtained through an improper stop of Garza. The
appellant here has not shown how any coercion that may have been directed against
MacKenney transgressed any of his rights. 

Issue 4 - Sufficiency of the Evidence
 

 Finally, appellant contends the evidence is factually insufficient to support his
conviction. We again disagree.

 The standard by which we review a factual sufficiency challenge is well established. 
We refer the parties to Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006) for its
explanation. 

 Appellant points out that without MacKenney's testimony, the only evidence that
implicates him is the ski mask found at his home and the use of his vehicle in the offense.
Further, he argues that MacKenney and two other black men could have traveled to
Lubbock to rob Hogan. Nevertheless, MacKenney's testimony was before the jury and
even though her credibility was subject to challenge, there also was videotape evidence
that not only connected her with appellant in Lubbock immediately before the crime
occurred but also confirmed her version of events. The jury was free to accept some, all,
or none of her testimony. In sum, and when weighed against the entire record, the verdict
is not manifestly unjust; nor does the entirety of the record undermine our confidence in
the verdict.

 The judgment of the trial court is affirmed.


 Brian Quinn 

 Chief Justice


Do not publish. 
1. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). 
2. MacKenney testified that she purchased duct tape and a black marker at the Walmart store in
Lubbock. She also stated that appellant and his brother went into the same store and bought spark plugs
which appellant or his brother said could be used to cut glass. MacKenney then drove the Suburban past the
guard gate entering the Buffalo Springs Lake area.