**Orlena AYERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–92–00825–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 12, 1994.

Gerald B. Scheve, Houston, for appellant.

Rikke Graber, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

**OPINION**

ROBERTSON, Justice.

A jury found appellant guilty of aggravated robbery and assessed his punishment at life imprisonment. Appellant brings a single point of error on appeal, citing the insufficiency of the independent evidence corroborating the testimony of an accomplice wit-

ness. We will affirm the judgment of the trial court.

On April 30, 1991, at about 11:30 p.m., Marcine and James Moody Adams were awakened by a loud noise in their home. Mr. Adams went to investigate. Mrs. Adams testified that from the bedroom, she could perceive that there were three black males in their home confronting her husband. She heard a scream and heard a male voice asking for guns. Mrs. Adams hid in the bedroom closet and heard the intruders and her husband go to the bedroom closet in which she was hiding to get some money. She heard one of the intruders become angry at finding no money, heard gunshots, then saw her husband fall to the floor dead. When the police arrived they found Mr. Adams's body in the hallway with gunshot wounds to the head and back and two large trash bags near the front door.

Christopher Montez was a participant in the plan to commit the offense, and it is his testimony placing appellant at the crime scene and naming him as one of those who planned to commit the offense that requires corroboration. The state offered the testimony of Tracy Dixon as corroboration. Dixon testified that appellant approached him "around" May 1, 1991, and asked Dixon to take a certain pistol because he did not want it anymore. Dixon asked appellant if the pistol had been used to shoot anyone and appellant answered it had not. Dixon tried to sell the gun two days later. Dixon testified that he became suspicious of the pistol when, soon after he received it, he saw news reports concerning the Adams murder. The state also presented expert testimony establishing that the four bullets recovered from Mr. Adams's body were fired from the weapon appellant gave to Dixon.

The state also offered the testimony of Robert Dasher. Dasher, an employee of an Appletree grocery store, testified that he noticed a suspiciously parked car in front of this store at about 11:30 p.m. on April 30, 1991. Because of the way the car was parked, Dasher thought the car's three passengers were planning to steal something from the store. Dasher was off-duty at this time and followed one of the car's passengers into the store. He saw the individual take a box of garbage bags. He then saw the man at the cash register with the box, saw that the box had been opened and the seal placed back over it, saw the man say wait a minute, then go back out to the car, leaving on the counter the box of bags. Dasher also testified that when this individual got back into the car, he saw the person lean back to get something out of either his pants or the front of his shirt. When the car pulled away, Dasher followed it long enough to copy down the license plate number. Dasher described the car as a late-model Ford Pinto with a red stripe.

When Dasher saw news reports concerning the Adams murder, he went back to the Appletree store and in the damaged goods area retrieved the box of garbage bags that had been opened by the person he followed that night and from which two bags had been taken. Dasher called the police to tell them of the box of garbage bags and to give them the license number of the Pinto he had followed the night of the murder. Although Dasher had incorrectly copied down one of the letters of the plate number, the police officers found a Ford Pinto with a similar license plate number registered to the father of Christopher Montez. The two garbage bags found at the Adams' house the night of the offense were the same kind as those Dasher had seen Montez with in the store, and one of the bags contained the fingerprint of Christopher Montez. Police arrested Montez on the basis of this information and received from Montez the name of one other person involved in the offense. Officer Swaim, who was investigating the offense, suspected that Montez's reluctance in naming the third person meant that Montez was protecting a close friend or relative. Appellant is a first cousin to Montez.

■ The accomplice witness rule requires that corroborating evidence independent of that of the accomplice be presented for the evidence to be sufficient to convict the accused. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979); *see Walker v. State*, 615 S.W.2d 728, 731 (Tex.Crim.App.1981) (stating accomplice witness testimony is suspect and cannot alone be basis for conviction). The

precise quantum of evidence necessary to satisfy the requirement of independent corroborating evidence has been described in a number of different ways. *See Gill v. State,* 873 S.W.2d 45, 48 (Tex.Crim.App.1994) (acknowledging lack of precise rule to determine sufficiency of corroborating evidence). For example, although evidence merely pointing the "finger of suspicion" to an accused will not suffice as independent corroborating evidence, *Castaneda v. State,* 682 S.W.2d 535, 538 (Tex.Crim.App.1984), the court of criminal appeals has also stated that seemingly insignificant circumstances may provide sufficient corroboration, that the corroboration need not directly link the accused to the crime, and that the corroborating evidence need not be of such substance as to be sufficient evidence on its own to convict the accused. *See Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988) (citing rules for assessing strength of non-accomplice witness testimony); *Eickenhorst v. State,* 662 S.W.2d 622, 625 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd) (corroborating testimony need not establish every incriminating fact alleged against accused). We must look to all the factors and circumstances of the case to determine whether there is non-accomplice evidence that tends to connect appellant to the offense. *Mitchell v. State,* 650 S.W.2d 801, 807 (Tex.Crim.App.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984).

■■■■ Viewed in the light most favorable to the jury's verdict, the non-accomplice witness testimony in the instant case established the following: (1) that three black males were involved in the offense leading to the shooting death of Moody Adams; (2) that Christopher Montez and Kenneth Morris were involved in the offense and Montez tried to conceal the identity of a third participant because the third person was a relative; (3) appellant is the first cousin of Montez; (4) a short time after the offense appellant was in possession of the pistol that shot Mr. Adams and sought to get rid of it by giving it to an acquaintance. Appellant is correct that his possession of the murder weapon does not directly implicate him in the offense because he could have obtained the pistol from Morris. However, corroborating evidence does not have to provide such a strong nexus; it need only tend to connect an accused to the offense. *Reynolds v. State,* 489 S.W.2d 866, 872 (Tex.Crim.App.1972). Possession of the murder weapon is proper corroborative evidence because it tends to connect an accused with the offense in which the weapon was used. *Beathard v. State,* 767 S.W.2d 423, 427 (Tex.Crim.App.1989); *Jackson v. State,* 745 S.W.2d 4, 13 (Tex.Crim.App.1988), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988).

We find the testimony from sources independent of the accomplice witness sufficiently corroborates the testimony of Christopher Montez naming appellant as a participant in the offense. Together, the evidence proves a sufficient basis upon which a rational trier of fact could have found appellant guilty as a party to the offense beyond a reasonable doubt. Appellant's point of error is overruled, and the judgment of the trial court is affirmed.