No. 04-99-00469-CR


Leroy MARTINEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 144th Judicial District Court, Bexar County, Texas


Trial Court No. 98-CR-4125-A


Honorable Pat Priest, Judge Presiding



Opinion by: Catherine Stone, Justice

 

Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice


Delivered and Filed: October 4, 2000


Affirmed


 Leroy Martinez appeals his conviction for murder. On appeal, Martinez challenges the legal
sufficiency of the evidence. We affirm the judgment of the trial court.

Factual and Procedural Background


 On May 4, 1998, Antonio Munoz was shot fatally at his home. Daniel Sanchez, an
accomplice witness as a matter of law, testified to the events of that day. On the day of the shooting,
Sanchez, Crisencio Resendez, appellant, Leroy Martinez, and his brothers, Richard and Gary, were
at the apartment that Sanchez and Leroy Martinez shared. Richard and appellant had a conversation
regarding Antonio Munoz, whom they believed had insulted one brother by calling him a derogatory
name, and decided they should "straighten him out." Appellant had a gun in the waist of his sweat
pants. All five got into appellant's car and went to a convenience store close to the victim's home
where appellant and his brother, Richard got out, retrieved something from the trunk, (1)
 and left on
foot. Sanchez then drove Resendez and Gary Martinez to a gas station and returned to the
convenience store to wait for appellant and Richard. They overheard a person coming out of the
store describing someone with a gun; Sanchez feared the two had been "caughten on to" and decided
to go looking for them instead of waiting. They did not find them and returned to the apartment
where they received a phone call from appellant to pick him up at a pizza parlor, which they did.
Upon arriving, appellant told them to drive around to find Richard. They found and picked up
Richard across from Edgewood High School. After they returned to the apartment, Sanchez
overheard one of the brothers say something like they knew they had hit him because it was at close
range. Chris Resendez, an accomplice as a matter of fact, also testified about the drive to the
convenience store, the gas station, back to the convenience store, to the apartment, to the pizza parlor
to pick up Leroy, and then to their looking for and picking up Richard.

 San Antonio Police Officer, Thomas Ortiz, testified about the unsolicited statements given
by appellant while in custody. Appellant stated it was an accident and they did not mean to do it.
He then went on to explain that when his brother and the victim got into a struggle, he saw the flash
of a gun and began shooting.

 Witness Maria Valadez testified that on the night of May 4, she saw two men walking down
a path across the street from Edgewood High School about the same time Sanchez and Resendez
testified to looking for and picking up Richard. Rebecca Gallegos also testified to seeing a man
coming out of a vacant lot across from Edgewood High School, squatting as he ran, and getting into
the passenger side of a dark Cadillac. 

 The jury found appellant guilty of murder and sentenced him to thirty years confinement.
Martinez argues in this appeal that in the absence of the accomplice witness testimony, the evidence
is legally insufficient to support the judgment.

Accomplice Witness Rule


 A person is defined as an accomplice if he could have been prosecuted for the same offense
as the defendant, or for a lesser included offense. Blake v. State, 971 S.W.2d 451, 454-55 (Tex.
Crim. App. 1998). If the evidence clearly demonstrates that a witness is an accomplice witness as
a matter of law, the trial court must instruct the jury on the law governing accomplice testimony. See
Blake, 971 S.W.2d at 455; Long v. State, 10 S.W.3d 389, 393 (Tex. App.-Texarkana 1999, pet.
ref'd).

 Under Article 38.14 of the Code of Criminal Procedure, "a conviction cannot stand on
accomplice testimony unless it is corroborated by other evidence tending to connect the defendant
with the offense; the evidence is insufficient if it proves merely the commission of the offense."
Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), cert. denied, 120 S. Ct. 805 (2000).
The corroborating evidence need only tend to connect the defendant to the offense, it is not necessary
for the corroborating evidence to directly connect the defendant to the crime or be enough by itself
to establish guilt. Id. "If the combined weight of the non-accomplice evidence tends to connect the
defendant to the offense, the requirement of 38.14 has been fulfilled." Id. The "tend to connect"
requirement, however, is not reviewed under standards of either legal or factual sufficiency of the
evidence. Id. at 462-63. Rather, it is a statutorily imposed sufficiency review requiring only that
there be other evidence "tending to connect the defendant with the offense." Id. at 463. Evidence
of the defendant's presence at the scene, in addition to other suspicious circumstances, even
seemingly insignificant ones, may well be enough to tend to connect the defendant to the offense.
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Similarly, evidence that the
defendant was in the presence of the accomplice at or near the time or place of the offense is proper
corroborating evidence. Cockrum v. State, 758 S.W.2d 577, 581 (Tex. Crim. App. 1988).

 We review non-accomplice testimony in the light most favorable to the jury verdict.
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Ayers v. State, 879 S.W.2d 176,
178 (Tex. App.-Houston [14th Dist.] 1994, no pet.). The jury is the sole trier of fact, and it may
judge the credibility of the witnesses, reconcile conflicts in the testimony, and accept or reject any or
all of the evidence on either side. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
In order to obtain a conviction for murder under the facts in this case, the State was required to
prove, beyond a reasonable doubt, that appellant either: "intentionally or knowingly cause[d] the
death of an individual; or intend[ed] to cause serious bodily injury and commit[ed] an act clearly
dangerous to human life that cause[d] the death of an individual." Tex. Pen. Code Ann. § 19.02(b)
(Vernon 1997). 

 Here, the State called accomplice witness as a matter of law, Daniel Sanchez, and the proper
jury charge instruction was given for this type of accomplice witness testimony. See Blake, 971
S.W.2d at 454 & n.8 (mandating an instruction be given to the jury on the corroboration requirement
of the accomplice witness rule only when an accomplice witness is called by the State); Solis v. State,
792 S.W.2d 95, 97 (Tex. Crim. App. 1990) (holding that the trial court is required to properly
instruct the jury when the evidence clearly shows that a witness is an accomplice as a matter of law).
The State also called Chris Resendez, and the proper jury charge instruction for an accomplice
witness as a matter of fact was provided to the jurors. See Blake at 455 (explaining the proper
instruction to be given to the jury in determining whether a witness is an accomplice witness as a
matter of fact).

Accomplice Witness Testimony


 Daniel Sanchez testified to what took place at the apartment shared by him and appellant in
the company of Resendez, appellant, and his brothers, Richard and Gary. He testified that he saw
appellant with a gun prior to leaving the apartment. (2) He recounted the conversation between Richard
and Leroy Martinez regarding the victim, Antonio Munoz. He went on to explain how all five got into
appellant's car and went to the convenience store close to the victim's home where the appellant and
his brother, Richard got out, retrieved something from the trunk, and left on foot. Sanchez then
detailed where they went and how they finally picked up Leroy at the pizza parlor and Richard from
across the street from Edgewood High School, not far from the victim's home. He reported one of
the brothers saying something back at the apartment like they knew they had hit him (the victim)
because it was at close range. Chris Resendez testified as well to where the five went and how they
retrieved appellant and Richard and returned to the apartment following the events of that day.

Non-Accomplice Testimony


 Excluding the testimony of Sanchez and Resendez, we find the non-accomplice testimony
tends to connect Martinez to the crime. San Antonio Police Officer, Thomas Ortiz, testified to the
unsolicited inculpatory statements given by appellant, while in custody. Appellant stated the shooting
was an accident and they did not mean to do it. Appellant also stated to Officer Ortiz that when they
got to Munoz's home, Munoz tackled Richard and they began fighting on the floor. While they were
fighting, appellant heard someone yell, "Watch out," followed by a gunshot. He then saw the gun
muzzle flash and began to shoot. Appellant stated to Officer Ortiz that Munoz "didn't deserve to die
like that. Not even a dog should be killed like that." 

 Rebecca Gallegos testified that she saw a man coming out of a vacant lot across from
Edgewood High School who suspiciously squatted as he ran and got into a dark colored Cadillac. (3)
Maria Valadez testified that she saw two men walking down a path across the street from Edgewood
High School at about the same time that Sanchez and Resendez testified they were looking for and
picking up Richard. 

 Viewed in a light most favorable to the jury verdict, we hold that the non-accomplice evidence
tends to connect Martinez with the instant offense. The non-accomplice witness testimony of
Gallegos and Valadez corroborates the testimony of Sanchez and Resendez, affirming they were in
the presence of appellant near the place of the offense. The strongest corroborating evidence,
however, is found in the unsolicited statement of appellant himself. While appellant argues his
statement admits only mere presence, and asserts lack of malevolent intent, accident, and defense of
third person, we presume the jury, after being properly instructed, concluded the accomplice witness
testimony had been corroborated by appellant's statements, as well as by the testimony of the non-accomplice witnesses. See Blake, 971 S.W.2d at 454 (acknowledging that it has been within the
province of the jury to assess the credibility of accomplice witness testimony for more than one
hundred years). We overrule Martinez's legal sufficiency challenge and affirm the judgment of the
trial court. 

 Catherine Stone, Justice

DO NOT PUBLISH

1. Sanchez testified that Richard Martinez retrieved what appeared to be a handgun from the trunk.

2. Sanchez testified that the gun he saw appellant with was a 9mm handgun; it was shown through the
testimony of a ballistics expert that some of the bullets removed from the body of the victim came from a 9mm
handgun.
3. Sanchez and Resendez testified they were in appellant's black Cadillac during the drop off and pick up of
appellant and Richard Martinez.