Jesus MUNOZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 71225.

Court of Criminal Appeals of Texas,
En Banc.

April 21, 1993.

Rehearing Denied May 26, 1993.

John Gates, Norbert J. Garney, El Paso, for appellant.

Steve W. Simmons, Dist. Atty., and Frank S. Triana, Asst. Dist. Atty., El Paso, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

BAIRD, Judge.

Appellant was convicted of capital murder pursuant to Tex.Penal Code Ann. § 19.-03(a)(2).[1] The jury affirmatively answered the statutory punishment issues submitted pursuant to Tex.Code Crim.Proc.Ann. art. 37.071.[2] Appellant was sentenced to death. Tex.Code Crim.Proc.Ann. art. 37.071(e). Appeal to this Court is automatic. Tex. Code Crim.Proc.Ann. art. 37.071(h). We will reverse.

## I.

## THE ACCOMPLICE WITNESS RULE

Appellant contends the evidence is insufficient to corroborate the testimony of the State's accomplice witnesses under Tex. Code Crim.Proc.Ann. art. 38.14. Art. 38.14 provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

As we held in *Walker v. State*, 615 S.W.2d 728 (Tex.Cr.App.1981):

An accomplice witness is a discredited witness because her or his testimony alone cannot furnish the basis for the conviction. No matter how complete a case may be made out by an accomplice witness or witnesses, a conviction is not permitted unless he or they are corroborated.

*Id.*, 615 S.W.2d at 731 (citations omitted).

 In order to determine whether the accomplice witness(es)' testimony is corroborated we eliminate all accomplice evidence from the record and determine whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense. *Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968); *Carrillo v. State*, 591 S.W.2d 876, 883 (Tex.Cr.App. 1979); *Passmore v. State*, 617 S.W.2d 682, 684 (Tex.Cr.App.1981); *Graham v. State*, 643 S.W.2d 920, 924 (Tex.Cr.App.1981); and, *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Cr.App.1991). Corroborative evidence need not establish appellant's guilt of the charged offense nor directly link appellant to the offense, but is sufficient if it "tends to connect" appellant to the offense. *Granger v. State*, 683 S.W.2d 387, 392 (Tex.Cr.App.1984) (citing *Edwards*, 427 S.W.2d 629, 632 (Tex.Cr.App.1968)). *See, Gosch*, 829 S.W.2d at 777; *Castaneda v. State*, 682 S.W.2d 535, 537 (Tex.Cr.App. 1984); and, *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Cr.App.1992). Each case must be considered on its own facts and circumstances—on its own merit. Apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *Mitchell v. State*,

1. Tex.Penal Code Ann. § 19.03(a)(2) provides in part:

(a) A person commits an offense if he commits murder as defined under Section 19.-02(a)(1) of this code and:

(2) the person intentionally commits the murder in the course of committing or attempting to commit ... robbery....

2. As the instant offense was committed on October 17, 1989, all references to Tex.Code Crim. Proc.Ann. art. 37.071 will be to the statute as it appeared at that time.

Tex.Code Crim.Proc.Ann. art. 37.071(b) provided in part:

(b) On conclusion of the presentation of the evidence, the court shall submit the following three issues to the jury:

(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;

(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society....

650 S.W.2d 801, 807 (Tex.Cr.App.1983). If the non-accomplice evidence fails to connect appellant to the offense, the evidence is insufficient to support appellant's conviction and an acquittal results. *Ex parte Reynolds*, 588 S.W.2d 900 (Tex.Cr.App. 1979); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *and, Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

 All facts and circumstances in evidence may be looked at to determine whether an accomplice's testimony is corroborated. *Mitchell*, 650 S.W.2d 801, 807 (Tex.Cr.App.1983). However, a challenge to the sufficiency of the evidence to corroborate the testimony of an accomplice is a challenge to the sufficiency of the evidence to support the jury's verdict on guilt or innocence. Therefore, our consideration of

the evidence is necessarily limited to that evidence before the jury at the time it rendered its verdict of guilt.[3]

## II.

### THE ACCOMPLICE WITNESS TESTIMONY

Armando Enriquez, Alejandro Gallegos, and Wilfredo Villa were accomplices as a matter of law.[4] Appellant, the accomplices and other young men congregated under the "Carolina Bridge" in El Paso. On the evening of October 17, 1989 the accomplices joined others at the Carolina bridge to drink beer and talk.[5] Appellant arrived with Matthew Keown. The group continued to consume beer and made several "beer runs" over the evening.[6] During one such "beer run," appellant threw a can of

---

**3.** The State invites us to consider evidence introduced at the punishment phase of appellant's trial in order to determine whether the evidence is sufficient to sustain the jury's verdict of guilt. *DeGarmo v. State*, 691 S.W.2d 657, 661 (Tex.Cr. App.1985). In *DeGarmo* the defendant judicially confessed to capital murder during the punishment phase of the trial. We held the law was clear that "such a defendant not only waives a challenge to the sufficiency of the evidence, but he also waives any error that might have occurred during the guilt stage of the trial." *DeGarmo*, 691 S.W.2d at 661.

The State relies upon our language in *DeGarmo* contending we must "look to all of the evidence in the case that was adduced at both stages of the trial, and not just that offered or presented by the State." *DeGarmo*, 691 S.W.2d at 661. In support of this language, we cited *Davis v. State*, 440 S.W.2d 291, 293 (Tex.Cr.App. 1969) and *Bellah v. State*, 415 S.W.2d 418 (Tex. Cr.App.1967). However, neither *Davis* or *Bellah* support this proposition. *Davis* holds we will view all evidence, i.e. evidence from the State *and* the Defendant, which was before the jury at the time of its verdict. *Davis*, 440 S.W.2d at 293. *Bellah* does not address the issue. *See, Bellah, supra.* Therefore, the State's reliance upon *DeGarmo* is misplaced.

In order to determine the sufficiency of the evidence to support a conviction, an appellate court is only authorized to view the punishment phase of the trial to determine whether a defendant has, by admitting elements of the offense, waived his right to complain of error during the guilt-innocence phase. Absent a judicial confession by the defendant, evidence from the punishment phase of a trial will not be considered in determining the sufficiency of the evidence to support a conviction. Because appellant did

not testify during the punishment phase, *DeGarmo* is not controlling.

**4.** The trial judge instructed the jury:

The witnesses, **ARMANDO ENRIQUEZ, ALEJANDRO GALLEGOS,** and **WILFREDO VILLA,** are accomplices, if an offense was committed, and you cannot convict [appellant] unless you first believe that their testimony is true and shows that the defendant is guilty as charged, and then you cannot convict the defendant upon said testimony unless you further believe that there is other testimony in the case, outside of the evidence of the said **ARMANDO ENRIQUEZ, ALEJANDRO GALLEGOS,** and **WILFREDO VILLA** tending to connect [appellant] with the offense committed, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission, and then from all the evidence you must believe beyond a reasonable doubt that [appellant] is guilty of the offense charged against him.

You are further instructed that one or more accomplices cannot corroborate each other; but such corroborative evidence, if any, must be from some other source than said accomplices, **ARMANDO ENRIQUEZ, ALEJANDRO GALLEGOS,** and **WILFREDO VILLA,** or any of them, as hereinabove charged.

**5.** Alejandro Gallegos and Wilfredo Villa were fifteen years of age at the time of the offense. Armando Enriquez was twenty-three years of age.

**6.** A beer run involves the theft of beer from a store. Villa testified: "You just go in. You get the beer and just run."

beer in the face of a store clerk who chased him.

Later in the evening, appellant and the accomplice witnesses decided to make another "beer run." Keown was driven home.[7] The group drove to appellant's residence where appellant wished to retrieve a pistol. The accomplice witnesses waited outside. Appellant returned with a ski mask, latex gloves and a pistol. Appellant had placed adhesive tape over a scar and tattoo on his face and neck.

Appellant stated he wished to rob a convenience store clerk. The group drove by several stores looking for a convenience store which was not busy. After locating such a store, appellant instructed Gallegos and Villa to enter the store and act as if they were purchasing beer. Appellant and Enriquez would then enter the store and order Gallegos and Villa to leave. The group parked a block away and walked to the store.

Villa and Gallegos entered the store and each selected beer. They observed two men playing a video game in the store's video room. Appellant and Enriquez entered and appellant instructed the deceased to give appellant the money. Enriquez was holding a plastic shopping bag with which to carry the money. Appellant ordered Gallegos and Villa to leave the store. As Gallegos exited the store, he handed Villa his beer and returned to take some "Bic" cigarette lighters. When Gallegos returned, he and Villa ran to the vehicle. As they ran, Villa heard two shots.

While in the store, appellant shot once at the floor in order to hurry the deceased. After retrieving the money Enriquez exited the store while appellant backed toward the door. As appellant opened the door to leave, Enriquez observed appellant raise the pistol and then Enriquez heard a shot. Appellant and Enriquez ran to the vehicle.

In the car, appellant asked Enriquez how much money was in the bag. After learning the robbery netted only twenty dollars,

appellant became angry, stating he had to pay some "tickets." Gallegos asked appellant if he shot the deceased and appellant laughed, stating, "Yeah, I hope she dies."[8] Appellant further stated, "That's what happens to chicks that don't move fast."

The group went to appellant's residence where they retrieved another vehicle. Appellant drove each of the accomplice witnesses home, cautioning each against discussing the robbery. Appellant stated that if the information was disclosed, he would kill the accomplices.

### III.

### NON–ACCOMPLICE EVIDENCE

Aside from the testimony of the accomplice witnesses, the State presented testimony from the medical examiner, ten police officers, the store manager, and another sales clerk from the store. Appellant presented no evidence at the guilt-innocence phase of the trial.

Dr. Juan Contin, Chief Medical Examiner of El Paso County, testified he performed an autopsy on the deceased. The deceased died from bleeding in the chest cavity, resulting from one gunshot which penetrated both lungs and the heart. The gunshot was from a distance of over two feet.

The police officers testified to the manner the crime scene was secured and the procedures used in investigating the offense. Two bullets and bullet casings were found at the crime scene. No fingerprints were recovered. Officers established a "trajectory of the bullet" to indicate the possible locations of the murder weapon at the time of the shooting. The murder weapon was not recovered.

A search warrant was executed upon appellant's home and vehicle. The officers recovered a ski cap, bank bag, latex gloves and adhesive tape from appellant's home. A shirt and a wrapper from a "Bic" lighter were recovered from appellant's vehicle. At the time of the offense, appellant had outstanding traffic tickets and appellant made arrangements to pay the tickets soon after the offense.

---

7. Evidence from the accomplice witnesses established that Keown was highly intoxicated and became sick.

8. The accomplice witnesses testified appellant's statements were in Spanish. However, the statements were translated into English.

Alan Ogden testified he was at the store playing a video game with John Bustamante on the night of the offense. While playing he heard a loud, vibrating "bang" and a male voice state "get it." He heard the deceased state "no, please." The video game was located against a wall and Ogden never turned around. He saw no one and heard nothing else.

Bustamante was watching Ogden play a video game when he heard a loud shot. He heard screaming and a male voice state "give me all of the money." The deceased stated "no, please." Bustamante then heard another shot. Bustamante "froze" and never turned around. He saw no one because the video game was against the wall and his back was to the counter.

Tommie Krcelic, the manager of the store, testified the register was missing a total of forty-seven dollars and seventeen cents. Krcelic was unable to determine if any merchandise was missing and could not identify the wrapper from the "Bic" lighter as coming from the store because each store in the chain carried "Bic" lighters and used the same pricing machine. Krcelic did recognize appellant as a customer in the store previously.

Linda Callender testified she was a clerk in the same store. On the date of the offense she worked the shift immediately preceding the deceased's shift. She also recognized appellant as a previous customer.

## IV.

### PRIOR CASE LAW

In reviewing the instant record to determine the sufficiency of corroboration of the accomplice testimony we find benefit in reviewing our previous decisions. In *Cruz v. State*, 690 S.W.2d 246 (Tex.Cr.App.1985), the State presented non-accomplice testimony proving the defendant was near the scene of the crime with a pistol and rifle some time prior to the time the complainant was shot; the defendant, his wife, and accomplice disappeared from the area at approximately the same time the complainant was shot; a gift belonging to the complainant was found in the defendant's vehicle; and the defendant was arrested in California. *Id.*, at 248–250. We held the non-accomplice testimony did not tend to connect the defendant to the offense because the evidence only corroborated extraneous matters and the State never proved the significance of the location of the Christmas gift. *Id.*, at 251.

In *Walker v. State*, 615 S.W.2d 728 (Tex. Cr.App.1981), a policeman was murdered. Through the testimony of an accomplice, the State proved the accomplice and Walker were looking for guns to steal on the evening of the offense. The accomplice testified Walker stole a rifle and ammunition from a truck. Walker shot a street light and stated that he could shoot the complainant from the same distance with no problem. The accomplice testified that plans were made to kill the complainant. The accomplice drove Walker to his car and left alone. While driving through town, the accomplice stopped and spoke briefly with the complainant. Later, the accomplice drove down the street and saw the complainant's leg sticking out of the car. The accomplice picked up Walker, who stated, "Well, I did it." The accomplice and Walker drove to a lake where the accomplice threw the rifle into the lake. The police recovered two .22 caliber rifles from the lake. Walker's fingerprint was recovered in the pickup from which the rifle was stolen; however, expert testimony failed to positively identify the recovered rifle as the murder weapon. *Id.*, at 729–731.

We held the evidence insufficient to corroborate the testimony of the accomplice witness. The position of the complainant's leg sticking out of the vehicle and the discovery of the rifle at the location stated by the accomplice did not tend to connect the defendant with the offense. Evidence which only corroborates the testimony of the accomplice, but does not tend to connect the defendant to the offense, is insufficient corroboration on which to base a conviction. *Id.*, at 732.

A similar issue arose in *Castaneda v. State*, 682 S.W.2d 535 (Tex.Cr.App.1984). In *Castaneda*, we stated:

> ... Although the State's case contains a great amount of detailed corroborative evidence which shows the commission of

the murders, there is no corroborative evidence which links [Castaneda] to the crime. The State argues that blood found on [Castaneda's] discarded clothing links [Castaneda] to the crime. We would note initially that the only testimony which identifies these items of clothing as belonging to [Castaneda] is hearsay testimony from one of the investigating officers. The State's brief emphasizes that the yellow coat was found in "[Castaneda's] bedroom." However, the record does not bear this out. The officer's testimony only refers to "the bedroom of the home." The evidence showed that [Castaneda] lived in the house with his mother and brother and there is no testimony that shows who occupied "the bedroom." Secondly, there is no evidence in the record that [Castaneda] was wearing this clothing at the time of the murders. The State also argues that the bloodstained knife connects [Castaneda] to the offense. However, the only evidence linking [Castaneda] to the knife came from the accomplice witness. No one else testified that the knife belonged to [Castaneda], or that [Castaneda] was ever seen in possession of the knife ... Finally, the State argues that the evidence shows that [Castaneda] and [the co-defendant] admitted the killings in the presence of several other persons shortly after the offense. However, the only testimony concerning these admissions came from the accomplice witness. The State did not have any of the other persons who heard these admissions testify. Thus there is no corroboration. There is no evidence other than the testimony of the accomplice witness that places [Castaneda] and [co-defendant] at the pool hall at any time. The corroborative evidence produced by the State in no way connects [Castaneda] to the crime. Because of the lack of evidence in this regard, we find that the evidence is insufficient.

*Castaneda,* 682 S.W.2d at 538.

## V.

## APPLICATION

■ In the instant case, the evidence corroborates the testimony of the accomplice witnesses but does not tend to connect appellant to the commission of the offense. Medical testimony confirmed deceased died from one gunshot. The bullets, shell casings, holes in the trash can, strike marks on the display counter and the floor, and evidence of trajectory of the bullet all corroborate the testimony of the accomplice witnesses. The testimony of Ogden and Bustamante support the sequence of events during the robbery. However, the evidence, taken as a whole, does not tend to connect appellant to the commission of the offense.

The evidence in the instant case is strikingly similar to that in *Castaneda, supra.* Appellant is not connected to the murder weapon. As previously noted, the murder weapon was not recovered. The ski mask, gloves and adhesive tape are not connected to the commission of the offense. The details of the execution of the offense are connected to appellant only through the testimony of the accomplices. Although Ogden and Bustamante heard statements similar to those provided by the accomplice witnesses, there was no testimony, outside that of the accomplice witnesses, that the statements were made by appellant.

The State did not offer non-accomplice testimony that appellant was in the company of the accomplice witnesses or in the area where the offense occurred. Presumably Keown, or others present with appellant and the accomplices earlier in the evening, might have done so, but, as in *Castaneda,* these persons did not testify.

The only evidence which could arguably tend to connect appellant to the offense is the wrapper from a "Bic" lighter found in appellant's vehicle. However, the testimony elicited by the State concerning this evidence is only that the wrapper was similar to those sold by deceased.

Although the non-accomplice evidence need not be sufficient to prove appellant's guilt, or even directly link appellant to the offense, we have always required more proof than is present in the instant case. *See, Adams v. State,* 685 S.W.2d 661, 668

(Tex.Cr.App.1985) (Defendant's blood-stained clothes were found at the scene; her fingerprint was found at the scene; and she was in the company of the accomplice at or about the time of the murder); *Gardner v. State,* 730 S.W.2d 675, 678–679 (Tex.Cr.App.1987) (Defendant was seen outside crime scene moments before the offense wearing clothing similar to that of the robber; he participated in the counting of "bills and change" the afternoon of the offense; he attempted to sell the murder weapon two months later); *Forbes v. State,* 513 S.W.2d 72, 75–76 (Tex.Cr.App.1974) (One day prior to the killing the defendant purchased the murder weapon and acquired ammunition; he was in the company of the co-defendant approximately two hours after the murder; and, later asked a witness to remain silent observing him with the co-defendant on the date in question).[9]

The State contends the cumulative effect of the circumstantial evidence points to appellant's guilt. In *Windham v. State,* 479 S.W.2d 319 (Tex.Cr.App.1972), where we considered a similar contention, we stated:

> The State suggests that "[A]ll of the suspicious circumstances are circumstantial evidence and none point directly to the guilt of the appellant but the cumulative effect of all of these is more than sufficient to corroborate the accomplice witness" and cites several cases in support of its contention. However, those cases ... basically involve situations where the appellant was found near the scene of the crime shortly after its occurrence, in possession of the stolen property or other incriminating evidence.

*Windham,* 479 S.W.2d at 321–322. Here, outside the testimony of the accomplices, there is no evidence appellant was near the scene of the crime and no evidence appellant was in possession of stolen property or incriminating evidence.

We find the State has failed to present evidence which tends to connect appellant to the offense and therefore the evidence is insufficient to corroborate the testimony of the accomplice witnesses. Accordingly, we reverse and remand this cause to the trial court for the entry of a judgment of acquit-

9. *See and compare, Holladay v. State,* 709

tal. *Ex parte Reynolds,* 588 S.W.2d 900, 904 (Tex.Cr.App.1979); *Burks v. United States,* 437 U.S. 1, 18, 98 S.Ct. 2141, 2150–2151, 57 L.Ed.2d 1 (1978); *and, Greene v. Massey,* 437 U.S. 19, 26–27, 98 S.Ct. 2151, 2155, 57 L.Ed.2d 15 (1978).

McCORMICK, P.J., and MILLER and WHITE, JJ., concur in the result.