NUMBERS 13-04-482-CR


 13-04-483-CR

 13-04-484-CR

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


FREDERICK PATTERSON, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 24th District Court of Jackson County, Texas.

 


OPINION ON REHEARING


Before the Court En Banc


Opinion on rehearing by Justice Garza


 

On the motion of appellant, Frederick W. Patterson, the en banc Court has re-considered the merits of the instant appeal and now orders that the panel's opinion in this
matter be withdrawn and that the following opinion by the en banc Court be issued in its
place. (1) 

This appeal follows three convictions stemming from three controlled purchases of
crack cocaine by Santos Castro Castaneda, a paid informant working for the Edna Police
Department and the Jackson County Sheriff's Department. Castaneda made the purchases
of crack cocaine through Acie Jones, Jesse Darnell Chase, and Lisa Robinson. The crack
cocaine sold to Castaneda was allegedly supplied to Jones, Chase, and Robinson by
appellant. 

Appellant was indicted and convicted on three counts of delivery of a controlled
substance and was sentenced to ten years' imprisonment for each offense, with the
sentences to run concurrently. Tex. Health & Safety Code Ann. § 481.002 (8), (9) (Vernon
Supp. 2006). Appellant was also assessed court costs in the amount of $140 and a fine of
$2,000 for each offense. Appellant now challenges his conviction by two issues: (1) there
is insufficient evidence to corroborate testimony given at trial by Castaneda, a paid
informant, or testimony given by Jones, Chase, and Robinson, who are accomplice
witnesses as a matter of law; and (2) counsel provided appellant with ineffective assistance
at trial. For the reasons that follow, we affirm the judgment of the trial court.

Background

The three controlled transactions leading to appellant's arrest and convictions
occurred over the course of two months. At trial, two officers from the Jackson County
Sheriff's Department testified about how the transactions unfolded. Prior to each
transaction, the officers met with Castaneda and searched her person, belongings, and
vehicle for illegal drugs. None were found. An electronic audio transmitting and recording
device (i.e., a wire) was then placed in her purse, and she was given money to purchase
illegal drugs. The two officers then followed Castaneda at a generous distance, remaining
in the same general area but often allowing her to move beyond their sight.

Castaneda approached numerous drug users and dealers and asked where she
could purchase crack cocaine. Three of the individuals she approached (Jones, Chase,
and Robinson) indicated that she could purchase crack cocaine from appellant. Each
individual accompanied her to an area near appellant's house, where he or she took
Castaneda's money and then went into appellant's house. Castaneda was left waiting in
her car during all three transactions. Each individual subsequently returned to the car with
crack cocaine, which they each indicated had come from appellant. After each transaction,
Castaneda rendezvoused with the officers and delivered into their possession the crack
cocaine she had purchased.

Throughout the investigation, the officers monitored the audio transmissions
generated by the wire carried by Castaneda and were thereby able to listen to
conversations she had with the various people with whom she came into contact. The
conversations were primarily with Jones, Chase, and Robinson, though Castaneda did have
two conversations with appellant, which are detailed below. The officers recorded the
transmissions generated by the wire, and the recordings were played for the jury at trial. 
A transcript of the recordings was also admitted into evidence, along with the crack cocaine
recovered by the officers after each transaction.

There was also trial testimony from Castaneda, Jones, Chase, and Robinson. 
Castaneda testified that she saw appellant at or near his house before or after each of the
transactions, though she never saw the transactions, never saw appellant in possession of
any crack cocaine, and never saw any exchange of money between appellant and Jones,
Chase, or Robinson. Castaneda had a conversation with appellant before the first
transaction, which was captured by the wire and is documented below. During that
conversation, appellant did not directly respond to Castaneda's request for crack cocaine,
though he did react to it. In a second conversation that occurred before the third
transaction, Castaneda commented that appellant had been drinking too much alcohol. 
Based on the recording, appellant apparently did not respond to Castaneda's comment.

At trial, Jones, Chase, and Robinson testified that they purchased the crack cocaine
from appellant and then gave it to Castaneda. For their part, the two officers involved in the
operation testified that they never actually saw appellant during the transactions and never
actually saw Castaneda come into contact with Jones, Chase, or Robinson. They also did
not see Jones, Chase, or Robinson come into contact with appellant. One of the officers
testified that he recognized appellant's voice during the following exchange documented on
a recording generated during the first transaction:

Castaneda: What's up, [appellant's name]?

 

Appellant: (Inaudible)

 

Castaneda: Can you fix me up a tight fifty?

 

Appellant: You see that white boy on the corner? On that bicycle.
(Inaudible)


The exchange then ended abruptly, with appellant driving off in his car ostensibly to avoid
the "white boy on the corner."

In addition to the foregoing exchange, the recordings also contained numerous
comments by Jones, Chase, and Robinson indicating that they could obtain crack cocaine
from appellant and that the crack cocaine they ultimately sold to Castaneda had come from
appellant. 

This constitutes the entire record of evidence incriminating appellant in the
transactions.

I. Corroboration of Testimony by Informant and Accomplices

Appellant's first issue is comprised of two sub-issues, one challenging the sufficiency
of the evidence to corroborate the testimony of the informant (Castaneda) and the second
challenging the sufficiency of the evidence to corroborate the testimony given by the three
accomplice witnesses (Jones, Chase, and Robinson). At the outset, this Court must decide
a preliminary question of law: may an informant corroborate the testimony of an accomplice
and vice versa? 

A. Corroboration Statutes

The legislature has mandated that a defendant may not be convicted based on the
testimony of an informant except as follows:

(a) A defendant may not be convicted of an offense under Chapter 481,
Health and Safety Code, on the testimony of a person who is not a licensed
peace officer or a special investigator but who is acting covertly on behalf of
a law enforcement agency or under the color of law enforcement unless the
testimony is corroborated by other evidence tending to connect the defendant
with the offense committed.

 

(b) Corroboration is not sufficient for the purposes of this article if the
corroboration only shows the commission of the offense.


Tex. Code Crim. Proc. Ann. art. 38.141 (Vernon 2005).

A similar provision restricts the use of testimony by accomplice witnesses: 

 

A conviction cannot be had upon the testimony of an accomplice unless
corroborated by other evidence tending to connect the defendant with the
offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense. 


Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005).

Article 38.17 provides, "In all cases where, by law, two witnesses, or one with
corroborating circumstances, are required to authorize a conviction, if the requirement be
not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are
bound by the instruction." See Tex. Code Crim. Proc. Ann. art. 38.17 (Vernon 2005).

B. Issue Preservation

The State contends that this Court should not address the merits of appellant's first
issue because it was not preserved by a timely objection at trial. For the reasons that
follow, we conclude that no timely objection at trial is required to preserve for appellate
review complaints regarding the sufficiency of corroboration evidence.

In general, to preserve a complaint for appellate review, a party must present a timely
request, objection, or motion to the trial court stating the specific grounds for the desired
ruling if the specific grounds are not apparent from the context. Tex. R. App. P. 33.1; see
Blue v. State, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000). A party's failure to timely and
specifically object at trial usually amounts to a procedural default that prevents review of the
error on appeal. See Blue, 41 S.W.3d at 131. This is a general rule to which there are
exceptions, as shown below.

Before addressing the question of issue preservation, we note that appellant is not
challenging the trial court's failure to submit an accomplice-witness jury instruction, which
would be a jury-charge error and could be raised for the first time on appeal. See Almanza
v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Instead, appellant argues that there
is insufficient evidence to corroborate the testimony of the informant and accomplices. 

Although the State maintains that appellant was required to preserve this issue at
trial, no authority is cited for this proposition other than the general mandate of rule 33.1.
See Tex. R. App. P. 33.1. We are unaware of any case precedent requiring that an
objection be made to preserve a challenge to the sufficiency of corroboration evidence on
appeal. Likewise, we are unaware of any case precedent holding that the issue can be
raised for the first time on appeal.

Criminal defendants may bring challenges to the legal and factual sufficiency of the
evidence on appeal without raising the issue at trial. See Moff v. State, 131 S.W.3d 485,
488-89 (Tex. Crim. App. 2004). But a challenge to the sufficiency of corroboration evidence
is different than an ordinary legal or factual sufficiency challenge. See Cathey v. State, 992
S.W.2d 460, 462-63 (Tex. Crim. App. 1999). The informant-witness rule and the
accomplice-witness rule are statutorily imposed and are not derived from federal or state
constitutional principles that define the legal and factual sufficiency standards. Id. Thus,
we cannot conclude, as appellant urges, that no objection is required to preserve the
sufficiency of corroboration evidence simply because no objection at trial is required to bring
ordinary challenges to the legal and factual sufficiency of the evidence.

Instead, we must turn to the law on procedural defaults to determine whether the
issue can be raised for the first time on appeal. The court of criminal appeals has explained
that the criminal justice system in Texas contains three distinct kinds of rules: (1) absolute
requirements and prohibitions, (2) rights of litigants which must be implemented by the
system unless expressly waived, and (3) rights of litigants which are to be implemented
upon request and are otherwise forfeited. Marin v. State, 851 S.W.2d 275, 279 (Tex Crim.
App. 1993), overruled in part by Cain v. State, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997);
see also Garcia v. State, 149 S.W.3d 135, 144 (Tex. Crim. App. 2004). Rights which are
waivable only, as well as absolute systemic requirements and prohibitions, cannot be made
subject to rules of procedural default because, by definition, they are not forfeitable. Marin,
851 S.W.2d at 279; Garcia, 149 S.W.3d at 144. Therefore, to determine whether the
sufficiency of corroboration evidence can be raised for the first time on appeal, we must
decide whether the issue is subject to rules of procedural default by determining which
category of rules it implicates.

As noted above, the provisions regarding corroboration of testimony by informants
and accomplice witnesses are found in the code of criminal procedure. See Tex. Code
Crim. Proc. Ann. arts. 38.141, 38.14. The informant-witness provision states that a
"defendant may not be convicted . . . unless the [informant's] testimony is corroborated by
other evidence tending to connect the defendant with the offense committed." Tex. Code
Crim. Proc. Ann. art. 38.141. The accomplice-witness provision contains a similar rule: 
"A conviction cannot be had upon the testimony of an accomplice unless corroborated by
other evidence tending to connect the defendant with the offense committed . . . ." Tex.
Code Crim. Proc. Ann. art. 38.14. If such requirements are not fulfilled, "the court shall
instruct the jury to render a verdict of acquittal, and they are bound by the instruction." See
Tex. Code Crim. Proc. Ann. art. 38.17.

From the foregoing provisions, it appears that the sufficiency of corroboration
evidence is an absolute requirement and therefore falls in the first category. We are mindful
that it could also fall in the second category because the provisions impose a duty on the
trial court to render a judgment of acquittal sua sponte if the evidence is insufficient. See
id.; Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004). The provisions do not
use language such as "on motion of the defendant" or "on the defendant's request." There
is no indication in the code of criminal procedure that sufficient corroboration evidence is
required only if demanded by the defendant, and we are unaware of any case law requiring
the defendant to speak up to enforce the corroboration requirements. We therefore
disagree with the State's contention that the sufficiency of corroboration evidence cannot
be raised for the first time on appeal.

Because appellant did not expressly waive the sufficiency of corroboration evidence
at trial, this Court does not need to decide whether the issue falls in the first or second
category. For the purposes of this appeal, we need only hold that the issue does not fall
in the third category and is therefore not subject to procedural default. See Tex. R. App. P.
47.1.

C. Accomplices as a Matter of Law

Before addressing the essential question raised by appellant's first issue, we must
resolve an additional point, which, according to the State, would defeat appellant's first
issue regardless of whether there was sufficient corroboration evidence. The State
contends that Jones, Chase, and Robinson were not accomplices as a matter of law
because, at the time of their testimony against appellant, they had already been indicted,
tried, and convicted for delivery of a controlled substance. We disagree.

An accomplice is a person who participates with a defendant before, during, or after
the commission of a crime and acts with the required culpable mental state. Kutzner v.
State, 994 S.W.2d 180, 187 (Tex. Crim. App. 1999) (citing McFarland v. State, 928 S.W.2d
482, 514 (Tex. Crim. App.1996)). The person's participation must involve an affirmative act
that promoted the commission of the offense with which the accused is charged. Id. A
person is an accomplice as a matter of law if he or she would be susceptible to prosecution
for the offense with which the accused is charged or a lesser included offense. Id.; Blake
v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998). A co-indictee is an accomplice as
a matter of law. Hendricks v. State, 508 S.W.2d 633, 634 (Tex. Crim. App. 1974). 

Although the court of criminal appeals has used the expression "susceptible to
prosecution" to describe an accomplice, the court has clarified that what it means by that
expression is that "a person is an accomplice if there is sufficient evidence connecting them 
to the criminal offense as a blameworthy participant." Blake, 971 S.W.2d at 454-55. 
According to the court, "Whether the person is actually charged and prosecuted for their
participation is irrelevant to the determination of accomplice status--what matters is the
evidence in the record." Id. at 455. Accordingly, we conclude that there is no merit to the
State's contention that a person ceases to be an accomplice upon conviction for the offense
in which he or she was an accomplice. Given the ample evidence adduced at trial to show
that Jones, Chase, and Robinson committed delivery of a controlled substance, the same
offense with which appellant was charged, we conclude that they were accomplices as a
matter of law and proceed to address appellant's first issue on the merits.

D. "Other Evidence" under Corroboration Provisions 

We now address what constitutes "other evidence" under the corroboration
provisions, or more specifically, what cannot constitute "other evidence" under the
corroboration provisions. See Tex. Code Crim. Proc. Ann. arts. 38.141, 38.14. Appellant
contends that the corroboration provisions should be applied together and that "other
evidence" should therefore exclude evidence that needs corroboration under either
provision. The State disagrees. It contends that the provisions should be applied
independently. According to the State, accomplice testimony is "other evidence" under the
informant-testimony provision, and informant testimony is "other evidence" under the
accomplice-witness provision. 

In deference to the legislature, which has already legislated in this area, and in
deference to the court of criminal appeals, which will have the final say in how the
provisions should be applied, this Court concludes that appellant's interpretation of "other
evidence" is the interpretation that comports closest to existing legal precedent. Only
appellant's position recognizes the inherent suspicion and disfavor owed as a matter of law
to testimony from witnesses such as accomplices and informants, who are of dubious
credibility, especially where such testimony is offered as the sole proof of guilt against the
defendant. See Blake, 971 S.W.2d at 454.

Under the State's interpretation, an accomplice would be able to corroborate the
testimony of an informant at trial. The same informant could then testify at the same trial
to corroborate the same accomplice. In this circular fashion, a defendant could be
convicted on nothing more than the testimony of an accomplice and an informant. This
result would be absurd in light of the legislature's clear action to disfavor such evidence and
to hold it insufficient for conviction as a matter of law. 

Accordingly, in reviewing the record to determine whether there is "other evidence
tending to connect the defendant with the offense committed," we exclude from
consideration all testimony that needs to be corroborated under articles 38.141 and 38.14. 

E. Review of "Independent" Evidence that "Tends to Connect"

The tends-to-connect standard presents a low hurdle for the State. See Dowthitt v.
State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993). After all, the tends-to-connect evidence is unlikely to be the same
evidence that proves guilt beyond a reasonable doubt. If the "other evidence" required by
the corroboration statute were always sufficient for conviction, there would be no necessity
for the State to ever rely on accomplice or informant testimony in the first place. No precise
rule has been formulated as to the amount of evidence required to corroborate the
testimony of such witnesses, but the Texas Court of Criminal Appeals has articulated some
basic precepts for our assistance. Dowthitt, 931 S.W.2d at 249; Gill v. State, 873 S.W.2d
45, 48 (Tex. Crim. App. 1994). The evidence used for corroboration does not need to be
in itself sufficient to establish guilt beyond a reasonable doubt. Gill, 873 S.W.2d at 48;
Munoz, 853 S.W.2d at 559; Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Nor
must it directly link the accused to the commission of the offense. Dowthitt, 931 S.W.2d at
249; Gill, 873 S.W.2d at 48; Munoz, 853 S.W.2d at 559; Cox, 830 S.W.2d at 611. While
the accused's mere presence in the company of the accomplice or informant before, during,
and after the commission of the offense is insufficient by itself to corroborate accomplice
testimony, evidence of such presence, coupled with other suspicious circumstances, may
tend to connect the accused to the offense. See Dowthitt, 931 S.W.2d at 249; Gill, 873
S.W.2d at 49; Cox, 830 S.W.2d at 611. Even apparently insignificant incriminating
circumstances may sometimes afford satisfactory evidence of corroboration. See Dowthitt,
931 S.W.2d at 249; Munoz, 853 S.W.2d at 559. The absence of "smoking gun" evidence
does not invalidate evidence that does connect the defendant to the offense. Trevino v.
State, 991 S.W.2d 849, 852 (Tex. Crim. App. 1999). 

Having reviewed the "independent" evidence in this case, we conclude that the
record presents the additional "suspicious circumstances" that, when coupled with the
appellant's "mere presence," are sufficient for corroboration purposes. See Dowthitt, 931
S.W.2d at 249; Gill, 873 S.W.2d at 49; Cox, 830 S.W.2d at 611. We are mindful that these
circumstances are not necessarily proof of guilt beyond a reasonable doubt, and do not list
them as such. They are simply "suspicious circumstances" that were established by the
evidence at trial: 

(1) Law enforcement agents successfully recovered crack cocaine on three
separate occasions in which they instructed the same confidential informant
to purchase crack cocaine while secretly carrying a wire. 

(2) Audio recordings generated by the informant's wire captured most of her
conversations with the three accomplices who testified at trial. 

(3) The audio recordings demonstrate that, on all three occasions, the informant
asked one of the three accomplices to help her purchase crack cocaine. 

(4) Each accomplice made statements on the audio recordings indicating that
appellant could provide the crack cocaine on each date in question.

(5) The recordings indicate that the accomplices each took the informant to
locate appellant and that each attempt to purchase crack cocaine ended at
appellant's home, where the recordings demonstrate that the informant and
accomplices succeeded in purchasing crack cocaine from appellant. 

(6) Throughout the recordings, the accomplices and the informant refer to
appellant as the source of the crack cocaine purchased by the informant on
all three occasions. 

(7) Appellant's voice is confirmed on recordings generated prior to two of the
drug buys.

(8) On the first occasion in which appellant's voice is confirmed, the records
demonstrate that the informant openly asked appellant for drugs and that
appellant responded with a suspicious statement to the effect that he was
concerned about a "white boy on the corner."

(9) In the foregoing exchange, appellant did not deny having drugs or deny that 
he sells drugs.

(10) Appellant's voice was also confirmed on the date of the third transaction,, but
this recording of appellant's voice merely confirms his presence at a bar
before the transaction at his home. 

(11) The law enforcement agents who monitored the informant's activities on all
three occasions testified that they secured crack cocaine from the informant's
possession immediately after the transactions that, according to the
recordings, were completed at appellant's home.

(12) The law enforcement agents testified that, although they did not remain in
visual contact with the informant and accomplices during the transactions,
they could independently verify that the transactions occurred at or near
appellant's home.

 Although there is nothing we would call a "smoking gun" in the factors listed above,
the court of criminal appeals has stated that sufficient tends-to-connect evidence may
sometimes be comprised of seemingly "insignificant circumstances." See Dowthitt, 931
S.W.2d at 249; Munoz, 853 S.W.2d at 559. The suspicious circumstances in this case are
far from insignificant. Because the independent evidence "tends to connect" appellant to
the offenses at issue, his challenge to the sufficiency of the evidence is overruled. 

II. Ineffective Assistance of Counsel

In his second issue, appellant contends that his trial counsel was ineffective for failing
to request a jury instruction on informant and accomplice witness corroboration. The
standard for testing claims of ineffective assistance of counsel is set out in Strickland v.
Washington, 466 U.S. 668, 687-88 (1984). To prevail on a claim of ineffective assistance
of counsel, an appellant must prove by a preponderance of the evidence that (1) trial
counsel's performance fell below an objective standard of reasonableness, and (2)
counsel's deficient representation prejudiced appellant's defense. Id. at 688; Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002); Rosales v. State, 4 S.W.3d 228, 231 (Tex.
Crim. App. 1999). To carry this burden, an appellant must show that the attorney's
representation fell below the standard of prevailing professional norms and that there is a
reasonable probability that, but for the attorney's deficiency, the result of the trial would
have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). In other
words, the appellant must prove counsel's representation so undermined the proper
functioning of the adversarial process that the trial cannot be relied on as having produced
a just result. Strickland, 466 U.S. at 686. If, however, "there is at least the possibility that
the conduct could have been legitimate trial strategy," then we must "defer to counsel's
decisions and deny relief on an ineffective assistance claim on direct appeal." Murphy v.
State, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003).

Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct fell within the wide range of reasonable representation. 
See Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. An appellate court should not
use hindsight to second-guess the strategy of counsel at trial, nor will the fact that another
attorney might have pursued a different course support a finding of ineffectiveness. Blott
v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); Harner v. State, 997 S.W.2d 695,
704 (Tex. App.--Texarkana 1999, no pet.). Any allegation of ineffectiveness must be firmly
founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Although counsel's failure to object to the jury charge in this case was a "glaring
error," see Robinson v. State, 665 S.W.2d 826, 831 (Tex. App.--Austin 1984, pet. ref'd)
(stating that counsel's failure to request a charge pursuant to article 38.14 when it was clear
that witness was accomplice witness as a matter of law was a glaring error, but finding that
representation was not ineffective because there was ample corroboration by other
evidence), we cannot conclude that counsel's deficient representation prejudiced appellant's
defense. As discussed above, the State produced ample corroboration evidence. We
therefore cannot conclude that, but for the counsel's deficiency, the result of the trial would
have been different. See Tong, 25 S.W.3d at 712. Accordingly, appellant's second issue
is overruled. 

The judgment of the trial court is affirmed.



 _______________________

 DORI CONTRERAS GARZA,

 Justice


Dissenting Opinion by 

Justice Linda Reyna Yañez.


Concurring Opinion by

Justice Errlinda Castillo.


Publish. 

Tex. R. App. P. 47.2(b).

Opinion delivered and filed 

this the 26th day of October, 2006.
1. See Patterson v. State, Nos. 13-04-482-CR, 13-04-483-CR, 13-04-484-CR, 2005 Tex. App. LEXIS
8253 (Corpus Christi Oct. 6, 2005).