**Opinion issued August 16, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NOS. 01-10-00176-CR and 01-10-00177-CR

_____

### STEVEN CECEILIO TORRES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 185th District Court
### Harris County, Texas
### Trial Court Case Nos. 1246750 and 1246751

---

## O P I N I O N

A jury found Steven Ceceilio Torres guilty of two capital murder offenses, for hiring two people who murdered Jose Perez. The trial court assessed

punishment at life imprisonment.[1]  TEX. PENAL CODE ANN. § 19.03(a)(3) (West Supp. 2011).  On appeal, Torres contends that the trial court committed jury charge error, by (1) denying his request for a jury charge for murder, rather than for capital murder, based on his reading of the indictment; and (2) failing to properly instruct the jury that independent corroboration of accomplice witness testimony is a necessity.  Finding no reversible error, we affirm.

### Background

Jose Perez was shot and killed in front of his family in a Houston restaurant parking lot.  He was a man in the wrong place at the wrong time.  As Perez left the restaurant after dinner, the shooter, Peter Quintanilla, and his accomplice, Michael Belmarez, mistook Perez for their intended target, Santiago Salinas, whom they sought as a part of a drug-related revenge killing.  Evidence at trial revealed that Salinas had been targeted for death by Jaime Zamora, a drug cartel leader, because Salinas had hurt members of Zamora's family back in Mexico.

Torres worked for the drug cartel headed by Zamora and Jose Chapa.  Chapa ordered Torres to find Salinas, and Zamora later met with Torres to give him a picture of Salinas.  Chapa told Torres that he could find Salinas at the restaurant,

---

[1]  Trial-court case number 1246750 and appellate case number 01-10-00176-CR (employing Peter Quintanilla); trial-court case number 1246751 and appellate case number 01-10-00177-CR (employing Michael Belmarez).

and that Salinas would be wearing a jersey. Torres called Quintanilla, told him about the jersey, and directed Quintanilla to the restaurant. Belmarez testified that he heard Torres tell Quintanilla over the phone to "take care of [Salinas]."

On the day he was killed, Perez was wearing an Astros jersey. Mistakenly believing that Perez was Salinas, Quintanilla shot and killed Perez. Salinas was in the restaurant at the time of the murder. Realizing that he was likely the intended target, Salinas fled to Mexico. Salinas was killed in Mexico several months later.

After the shooting, Quintanilla left the restaurant parking lot with Belmarez. Two days later, Chapa gave Torres money in an envelope to pay Quintanilla. Torres went to Belmarez's house to meet with Quintanilla, and he delivered the money.

After police discovered Belmarez's involvement in Perez's murder, Belmarez was indicted for capital murder. He entered into a plea bargain with the State in which he agreed to testify against Torres in exchange for a forty-five-year sentence for the lesser offense of murder. Belmarez admitted to police that he was the driver on the night of the murder and testified at trial that Torres contacted both Quintanilla and Belmarez, gave them two guns, and asked them to kidnap Salinas. The first time Belmarez knew they were supposed to kill Salinas, rather than kidnap him, was when Torres called Quintanilla on the evening of the murder and

3

told them to "take care" of Salinas, which both men understood to mean to kill him. Torres also gave $1,500 to each of them after the murder.

## Discussion

### *Capital Murder Instruction*

Torres complains that the trial court erroneously denied his request for a jury charge on murder, rather than capital murder, because the indictments did not properly charge him with capital murder for hire. The indictments, in relevant part, read:

Trial-court case number 1246750

> . . . **STEVEN CECELIO TORRES**, hereinafter styled the Defendant, heretofore on or about **MAY 20, 2006**, did then and there unlawfully, intentionally and knowingly cause the death of JOSE PEREZ, hereinafter called the Complainant, by employing PETER QUINTANILLA for remuneration and a promise of remuneration, to-wit: MONEY, by SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM.

Trial-court case number 1246751

> . . . **STEVEN CECELIO TORRES**, hereinafter styled the Defendant, heretofore on or about **MAY 20, 2006**, did then and there unlawfully, intentionally and knowingly cause the death of JOSE PEREZ, hereinafter called the Complainant, by employing MICHAEL BELMAREZ for remuneration and a promise of remuneration, to-wit: MONEY, by SHOOTING THE COMPLAINANT WITH A DEADLY WEAPON, NAMELY A FIREARM.

The trial court's jury charge tracked the indictments, in that "by shooting" followed after "by employing . . . for renumeration":

4

Trial-court case number 1246750

      Now, if you believe from the evidence beyond a reasonable doubt that Steven Torres, in Harris County, Texas, on or about May 20, 2006, unlawfully intended to cause the death of Santiago Salinas by employing Peter Quintanilla for remuneration or the promise of remuneration, to-wit, money, by shooting Santiago Salinas with a deadly weapon, namely a firearm, but instead Peter Quintanilla caused the death of Jose Perez by shooting Jose Perez with a deadly weapon, namely a firearm, then you will find the defendant guilty of capital murder, as charged in the indictment.

Trial-court case number 1246751

      Now, if you believe from the evidence beyond a reasonable doubt that Michael Belmarez, in Harris County, Texas, on or about the 20th day of May, 2006, did then and there unlawfully intend to cause the death of Santiago Salinas for remuneration from the defendant, Steven Torres, to-wit, money, by shooting Santiago Salinas with a deadly weapon, namely a firearm, but instead caused the death of Jose Perez by shooting Jose Perez with a deadly weapon, namely a firearm, then you will find the defendant guilty of capital murder, as charged in the indictment; or if you believe from the evidence beyond a reasonable doubt that Michael Belmarez, acting alone or with Peter Quintanilla as a party to the offense, did then and there unlawfully intend to cause the death of Santiago Salinas for remuneration from the defendant, Steven Torres, to-wit, money, by shooting Santiago Salinas with a deadly weapon, namely a firearm, but instead caused the death of Jose Perez by shooting Jose Perez with a deadly weapon, namely a firearm, then you will find the defendant guilty of capital murder, as charged in the indictment

At the charge conference, Torres's counsel objected, claiming that the indictment did not set forth a proper definition of capital murder:

      [Torres's lawyer:] And our argument is set out in the motion and basically based on upon the grammatical structure of the indictment, that Mr. Torres is charged with shooting Jose Perez, and the language regarding remuneration or employing either Quintanilla

5

or Belmarez, this applies to both causes, is surplusage and does not have an object or does not alert Mr. Torres or anyone else, any reader, that he employed him for the purpose of killing someone else. We argue that is does not state a capital murder offense; it merely states a murder offense.

THE COURT: I just want to be clear: that argument is sort of a legal argument based on the indictment as opposed to a factual argument based on the evidence presented?

[Torres's lawyer:] Yes. It's also a grammatical argument, Your Honor.

On the day of the charge conference, Torres also filed a "Defendant's Motion That Jury Only Be Instructed for the Offense of Murder, and Defendant's Requested Jury Instruction." The specific objection in the motion is as follows:

The Defendant submits that the State's indictments herein, in effect, allege that the manner and means whereby Defendant caused the death of Jose Perez was by 1) employing either Peter Quintanilla or Michael Belmarez, for remuneration of the promise of remuneration (money), and 2) by shooting Jose Perez with a deadly weapon, namely, a firearm. The indictments, however, do not allege what Quintanilla or Belmarez were to do after being employed by the Defendant. For example, were they to be look-outs, were they to lure Perez to his death, or were they to be get-a-way drivers? Neither indictment alleges conduct on the part of either Quintanilla or Belmarez other than a passive employment relationship with the Defendant. What the indictments do allege, in a common sense reading is that the Defendant caused the death of Jose Perez by the Defendant shooting Perez with a deadly weapon namely a Firearm.

Torres contends that the indictments charged him only with murder, not capital murder for remuneration, and thus the trial court erred in denying his requested jury charges on murder. In support of his contention, Torres relies on our court's

6

decision in *Robinson v. State*. 266 S.W.3d 8, 10–13 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). In *Robinson,* we reversed a conviction for capital murder because the application paragraph of the jury charge instructed that the jury could find the defendant guilty of either capital murder for hire (in the first paragraph), or of murder (in the second paragraph, because it failed to include the aggravating factor of murder for remuneration). *Id.* at 15.

The error in *Robinson* is not present here. In contrast to *Robinson*, in which the application paragraph allowed a conviction for murder without any reference to an aggravating factor, here, the indictment and charge in both instances instruct that the jury must find that Torres employed his co-conspirators to commit the murder. Torres argues that *Robinson* applies by analogy: because the jury charge here lacks an expressed direct object in both application paragraphs, a jury could conclude that Torres committed only murder (by shooting Perez himself) and not murder for hire. He contends that one could read the paragraph to require that Torres hired others, but not "to shoot", because the final clause reads "by shooting". But in *Robinson,* the requisite element of remuneration was entirely missing from the faulty portion of the charge. Not so here: the intervening clause instructs that the jury must find that Torres caused the death "by employing" another "for renumeration. According to Torres, this clause is surplusage. But, the final participle phrase—"by shooting"—fairly refers to causing the death of Perez,

7

and reasonably conveys the intended meaning. Giving effect to both phrases, the charge instructs the jury that that Torres should be found guilty of capital murder if he employed Quintanilla or Belmarez to cause the death of another "by shooting" that person. We hold that the trial court did not err in instructing the jury on the aggravating factor of murder for hire.

### *Accomplice-Witness Instruction*

Torres next contends that the trial court erred in failing to instruct the jury that accomplice-witness testimony must be independently corroborated. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."). The State acknowledges that Belmarez is an accomplice witness as a matter of law, because he had pleaded guilty to Perez's murder at the time of Torres's trial. The State also concedes that the trial court had an affirmative duty to submit an accomplice witness instruction to the jury. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). We hold that the trial court erred in failing to exercise its independent duty to instruct the jury that accomplice-witness testimony must be corroborated.

Torres has conceded that this issue was not preserved by an objection in the trial court. We therefore review this charge error under the egregious harm

8

standard of review. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (test for egregious harm is whether the defendant has been denied a fair and impartial trial). A defendant is egregiously harmed by the trial court's omission of an accomplice-witness instruction if a rational jury "would have found the corroborating evidence so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). We consider the extent of any harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.* at 690 (quoting *Almanza*, 686 S.W.2d at 171).

To measure the sufficiency of the corroborating evidence, we eliminate the accomplice evidence from the record and determine whether the remaining inculpatory evidence tends to connect the defendant to the offense. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). This evidence may be direct or circumstantial. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993). In evaluating the non-accomplice evidence, we consider its reliability and the strength of its tendency to connect the defendant to the crime. *Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002). Corroborating evidence is reliable if "there is no rational and articulable basis for disregarding it or finding that it fails

to connect the defendant to the offense." *Id.* at 633. We evaluate the sufficiency of non-accomplice evidence in light of the particular facts and circumstances of each case. *Smith*, 332 S.W.3d at 442.

On appeal, Torres admits independent corroborating evidence—including his own statements—exists, showing that: (1) Torres was worked for a drug cartel in Houston led by Zamora and Jose Chapa; (2) Chapa told Torres to find Salinas; (3) Zamora met with Torres and gave him a picture of Salinas; (4) Chapa told Torres to find someone to go to the restaurant where Salinas was eating and that Salinas was wearing a jersey; (5) Torres enlisted Quintanilla to go to the restaurant; (6) Torres later called Quintanilla and informed him about the man wearing a jersey; (7) After the murder, Chapa gave Torres gas money and additional money in an envelope to pay Quintanilla for killing a man Torres thought was Salinas; and (8) Torres met with Quintanilla at Belmarez's house to deliver the envelope containing the money. Torres also identified Quintanilla in a police photo spread as Peter Quintanilla—the man whom he had conversed with on the day of the murder.

Reliable evidence from sources other than Belmarez connects Torres to the capital murder, and independently corroborates Belmarez's testimony. Given the strength of this independent evidence, we hold that the jury would not have disregarded the accomplice witness testimony, even had it received the proper

10

instruction.  Accordingly, we conclude that Torres has failed to show that he was egregiously harmed by the failure to include the instruction.

## Conclusion

We affirm the judgments of the trial court.


Jane Bland
Justice


Panel consists of Justices Keyes, Bland, and Sharp.  Justice Sharp, concurring in a separate opinion.

Publish.   TEX. R. APP. P. 47.2(b).

11